650 A.2d 10

PATRICIA K. WARD, PLAINTIFF, v. ENIXA MERCED, MIGUEL A. PAGAN, ELECTRONIC DATA SYSTEMS, AS SERVICING CARRIER FOR THE NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, DEFENDANTS, AND THE NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT–APPELLANT, AND UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted November 16, 1994—Decided December 15, 1994.

Before Judges GAULKIN, BAIME and RODRIGUEZ.

*Slimm & Goldberg,* attorneys for appellant (*Peter S. Cuddihy,* on the brief).

*Tomlin, Clark* and *Hopkin,* attorneys for respondent (*Christopher Condit,* on the brief).

The opinion of the court was delivered by

GAULKIN, P.J.A.D.

Patricia K. Ward was struck by a car as she walked across an Atlantic City street. She sued both the driver and the owner of the car, and also the New Jersey Automobile Full Insurance Underwriting Association (NJAFIUA) and the Unsatisfied Claim and Judgment Fund Board (UCJFB). Ward alleged that (1) NJAFIUA had insured the car's owner, Pagan, (2) the insurance had been cancelled prior to the accident, (3) the NJAFIUA servicing carrier had "negligently and carelessly delayed notification" of the cancellation, and (4) the delay caused Ward's notice of intention to assert a claim against the UCJFB to be rejected as untimely. Against the UCJFB, Ward sought declaratory judgment that her notice of intention, given immediately after the

NJAFIUA disclaimer, was timely under *N.J.S.A.* 39:6–65. On Ward's motion, the Law Division ruled that her UCJFB claim was timely. UCJFB then moved for summary judgment invalidating NJAFIUA's cancellation of its insurance policy because it did not conform with *N.J.S.A.* 17:29C–10. The Law Division granted that motion, effectively reinstating the NJAFIUA policy. NJAFIUA appeals. We reverse.[1]

The Law Division judge found the cancellation notice insufficient because NJAFIUA had failed to prove the statutory requirement that "at the time of the mailing of said notice [of cancellation], by regular mail, the insurer has obtained from the Post Office Department a date stamped proof of mailing showing the name and address of the insured." *N.J.S.A.* 17:29C–10. NJAFIUA presented a certificate of mailing consisting of 21 pages listing the names and addresses of 206 insureds, including Pagan, to whom cancellation notices were purportedly mailed at the Mount Laurel post office on October 12, 1989. Each page displayed the local post office stamp dated October 12, 1989; the first page bore postage stamps totalling $30.90, concededly the proper fee for a certificate of mailing for 206 pieces of mail presented at one time. The judge found that the certificate did not fulfill the statutory requirement:

> Absent a demonstration that either a certificate of mailing on an individual form was used or evidence that there was a comparison of the list to the envelopes which can be presented by extraneous, extrinsic testimony, this Court is not going to allow a carrier to cancel, and the summary judgment to [UCJFB] will be granted.

The UCJFB here similarly argues that NJAFIUA "fail[ed] to put forth ... proof that a postal employee reviewed and cross-checked the master list against the actual envelopes." Both the motion judge and the UCJFB have misperceived the certificate of mailing.

The United States Post Office Domestic Mail Manual then in effect provided that "Form 3877 ... or forms printed at the

---

[1] UCJFB does not challenge the order determining that Ward's notice of intention was timely given.

mailer's expense, may be used for certificates of mailing for three or more pieces of mail of any class presented at one time." Domestic Mail Manual (Issue 32, Sept. 17, 1988), § 931.22. As explained in the certification of Mount Laurel Postmaster Cunningham presented in the trial court by NJAFIUA, Form 3877 "requires that the sender manually list the name and address of all the prospective recipients." However, because the form is "impractical and time consuming" where voluminous mailings are made, the mailer is permitted to use "a computer generated list setting forth the pertinent information." Postmaster Cunningham certified that whichever means is employed, the document "acts as a Certificate of Mailing indicating that each item on the list has been accounted for by a postal clerk and has been entered into the mail stream." The NJAFIUA listing concededly qualified, as Postmaster Cunningham certified, as "the type of list ... submitted in lieu of Form 3877."

Postmaster Cunningham did not explain the phrase "accounted for by a postal clerk," but a fair reading of the certification in light of the Domestic Mail Manual makes clear that the postal clerk is required to verify that the mailing includes an envelope addressed to each of the persons and addresses listed on the form. Domestic Mail Manual (Issue 32, Aug. 17, 1989), § 931.44b provides:

When the pieces are described and listed on firm mailing sheets or on approved forms, they should be presented in the order in which they are entered on the sheets; otherwise, the mailer must consecutively number each entry and lightly number each piece to show the sheet and line number on which they are described.

That mandate only makes sense as a means of easing the postal clerk's task in checking each envelope against the certificate of mailing.

Also of note is § 931.43, describing an entirely distinct Form 3606 that is "used as a certificate that a specified number of pieces have been mailed." That certificate "only states the total number of articles mailed and must not be used as an itemized list." *Ibid.* The certification provided by Form 3877 or its sender-generated alternative—that each item has been "accounted for by a postal

clerk"—cannot properly be read as verifying only that the specified number of pieces have been mailed.

We thus read the certificate of mailing as certifying that on October 12, 1989 NJAFIUA mailed an article to Pagan at his record address by regular first-class mail. So read, the certificate qualifies as "a date stamped proof of mailing showing the name and address of the insured." *N.J.S.A.* 17:29C–10. Nothing in *Hodges v. Pennsylvania Nat. Ins.*, 260 *N.J.Super.* 217, 615 *A.*2d 1259 (App.Div.1992), warrants a contrary conclusion. There the court found that the insurer had not presented an official post office certificate of mailing and that the insurer's extrinsic proofs "fall far short of the quality of proof inherent in an official post office certificate." *Id.* at 226, 615 *A.*2d at 1264. Indeed, the court specifically noted that issuance of an official certificate of mailing would have "entail[ed] individual review of letters and addresses by a postal employee," and that the insurer's proofs showed "only a self-serving cursory verification of a list of 640 names and addresses." *Ibid.* Unlike *Hodges*, the record here includes what we find to be an official certificate of mailing confirming that a postal clerk verified the mailing of an envelope properly addressed to Pagan. That overcomes the difficulty found in *Hodges*.

The January 7, 1994 order is reversed. The matter is remanded to the Law Division for proceedings consistent with this opinion.