211 N.J. Super. 538 (1986)
512 A.2d 496
JANE CELINO, ETC., PLAINTIFF-APPELLANT,
v.
GENERAL ACCIDENT INS. AND/OR CAMDEN FIRE INSURANCE CO., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 13, 1986.
Decided May 28, 1986.
*539 Before Judges PRESSLER, DREIER and BILDER.
Brown & Connery, attorneys for appellant (Dennis P. Blake, of counsel; Mark P. Asselta, on the letter brief).
Robert E. Edwards, attorney for respondent.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Plaintiff Jane Celino, administratix of the estate of her daughter, Roxann A. Celino, who died in a motor vehicle accident, filed this action against the decedent's automobile liability carrier General Accident Insurance and/or Camden Fire Insurance Company, seeking to recover personal injury benefits payable upon an insured's death. Defendant moved for summary judgment, contending that as a matter of undisputed fact the policy had been effectively cancelled prior to the date of the accident. Plaintiff appeals from the grant of that motion. We reverse.
According to the record on the motion, the policy in question covered the period from December 9, 1983 to June 9, 1984. The fatal accident occurred February 15, 1984. Defendant asserts that on January 25, 1984 it sent to both the decedent and to Burlington County Trust Company, the loss payee named in the policy, a notice of cancellation effective February 9, 1984. A copy of the notice of cancellation, annexed to its trial brief in support of its summary judgment motion, has an "X" typed in a box next to the legend explaining that the reason for cancellation was "because of failure to meet this company's current underwriting standards as indicated below." There was, however, no such indication given, and no other box on the cancellation *540 form was marked. As proof of mailing to both decedent and the loss payee, defendant also annexed to its trial brief photocopies of the post office certificates of mail forms, one for each of the addressees and each bearing the Cherry Hill post office date stamp of January 25, 1985. On February 6, 1986, defendant asserts, it sent a refund to decedent representing the unearned portion of her paid premium.
In response to the motion, plaintiff submitted an affidavit stating that as a matter of her personal knowledge, the decedent "maintained a meticulous file dealing with all of her insurance matters" and that she, plaintiff, found no notice of cancellation in her daughter's insurance file after her death, although she did find the notice of premium refund. Also annexed to her trial brief in opposition of the motion is a copy of a letter from the installment banking supervisor of the successor bank of the named loss payee written to defendant on March 21, 1984 stating that, "We have no record on file of the cancellation of Miss Celino's auto insurance."
Based on the foregoing facts, the trial judge granted summary judgment without oral argument and with no apparent statement of reasons. Plaintiff then sought reconsideration, which was granted. The motion for reconsideration was orally argued but, since no new facts had been submitted, the court reaffirmed its original action without further elucidation.
Because the policy is represented to us to have been a new rather than a renewal policy and since cancellation was effected within the first 60 days of coverage, we are satisfied that the time prescriptions specified by N.J.S.A. 17:29C-8 for the giving of effective notice of cancellation do not apply. See N.J.S.A. 17:29C-7. The policy itself requires ten days' notice of cancellation of new policies within the first 60 days of coverage, and there does not appear to be any statutory impediment to the validity of that provision. Plaintiff indeed concedes that to be so. Thus, the only issue before us is whether the notice of *541 cancellation complied with N.J.S.A. 17:29C-10, as amended by L. 1980, c. 165, § 2, which provides in full as follows:
No written notice of cancellation or of intention not to renew sent by an insurer to an insured in accordance with the provisions of an automobile insurance policy shall be effective unless a. (1) it is sent by certified mail or (2) at the time of the mailing of said notice, by regular mail, the insurer has obtained from the Post Office Department a date stamped proof of mailing showing the name and address of the insured and b. the insurer has retained a duplicate copy of the mailed notice which is certified to be a true copy.
We conclude that the notice failed to comply and, therefore, under the terms of the statute was of no effect.
The statute clearly prescribes two conjunctive conditions for effective notice of cancellation, which it separately designates as "a" and "b." The first condition, the manner of delivering the written notice to the insured, can be satisfied either by certified mailing or by the carrier's obtaining of a date-stamped certificate of mailing from the post office. This condition was met here by reason of the date-stamped certificate which defendant obtained. The second condition of the statute is that the insurer must have retained a duplicate copy of the mailed notice which is certified to be a true copy. Defendant concedes that it did not comply with this condition, its brief arguing that "to the extent that the notice of cancellation is not certified to be a true copy, this fact would seem to be inconsequential to the present case." We do not regard the failure of compliance with this second condition as inconsequential but rather take the view that compliance is a sine qua non of an effective cancellation. Our conclusion is based not only on the plain language of the statute but on its history and evident intention.
The previous version of N.J.S.A. 17:29C-10, as enacted by L. 1968, c. 158, § 5, had provided in full as follows:
Proof of mailing of notice of cancellation, or of intention not to renew or of reasons for cancellation to the named insured at the address shown in the policy, shall be sufficient proof of notice.
In construing this section, the Supreme Court in Weathers v. Hartford Insurance Group, 77 N.J. 228, 234-236 (1978), was satisfied that its import was to give effect to a properly mailed notice even if it were in fact not received by the insured. It *542 went on, however, to hold that proper mailing of a particular notice could not be conclusively established by evidence consisting only of a certificate of mailing and testimony respecting the standard procedures of the company in preparing and mailing notices. As the Court explained,
Our determination that mailing was not established conclusively is based upon a number of factors affecting the weight of defendant's proofs. The postal clerk who stamps the certification of mailing does not examine the contents of the envelope purportedly containing the notice. The single supervisory official who testified for defendant in this case did not indicate personal knowledge as to individualized review of the envelopes by a postal clerk before the postmark is affixed. Evidence from personnel in defendant's organization charged with mailing notices and from postal employees as to their verification of the contents of mailed envelopes would have established a stronger case of mailing than what defendant adduced. Defendant's witness conceded it was possible that a given envelope might not contain a notice to the person purportedly addressed. Thus, while defendant's proof of mailing was sufficient to go to the fact-finder on the issue, it did not compel a finding of mailing as a matter of law. [77 N.J. at 235]
The Court further noted that the insured's proof of non-receipt of the notice "is admissible for the purpose of refuting the hypothesis of mailing." Ibid.
It is evident that the holding in Weathers placed a substantial burden on the carrier in attempting to prove, in the face of an insured's denial of receipt, that a specific notice was sent. Clearly, considering such factors as insurance company size, the volume of its records and files, and routine turnover of clerical employees, it would be extremely difficult for a carrier to prove, well after the fact, the actual mailing of any particular notice by evidence other than standard practice and inferences and deductions based thereon.
We regard the 1980 amendment of N.J.S.A. 17:29C-10 as a direct legislative response to the practical problems engendered by Weathers. The Statement of the Senate Labor, Industry and Professions Committee endorsing the bill enacted as L. 1980, c. 165 explains in part:
To be effective, cancellation notices must be sent by certified mail, return receipt requested, and proof of mailing must be accompanied by a return receipt signed by the policyholder or a member of this household or, the insurer must *543 obtain from the Post Office Department a date stamped proof of mailing showing the name and address of the insured, and must retain a copy of the mailed notice which is certified to be a true copy.
A recent court decision[,] Weathers v. Hartford, argued in the Supreme Court on April 24, 1983, cast some doubt on the sufficiency of the proof of mailing requirement of P.L. 1968, c. 518 (C. 17:29C-10). This bill is designed to make the proof of mailing requirement more explicit.
As we therefore construe the statutory condition of a retained certified duplicate copy, it is designed to ease the carrier's proof of mailing burden imposed by Weathers by providing it with a simple, expedient and effective alternative to reliance on standard practice in sending notices. This alternative is its retention of a duplicate copy of the notice, certified to be a true copy. But as we understand the intent of the statute, this mechanism requires that the duplicate be certified as a true copy contemporaneously with preparation and mailing of the original. The whole point of the requirement is to permit a clerical employee or other custodian of the business record to testify that the file copy is known to be a true copy of the mailed document because the person mailing it so certified at that time. The added weight of the evidence thus afforded to the file copy is therefore clearly dependent on a contemporaneous certification. A certification made later would be hardly more than an in-house version of standard-practice proof.
We need not address the question of whether a proof of mailing which meets both conditions of the statute can be regarded as conclusive proof of mailing in Weathers terms. We are certain, however, that the statute, by its express terms, denies effectiveness to a proof of mailing which does not meet both conditions and, as a quid pro quo accords at the very least a strong presumption of effectiveness to a proof of mailing which does comply.
We are therefore satisfied, based on the undisputed facts, that the notice of cancellation was, as a matter of law, ineffective. Hence, plaintiff is entitled to the benefits afforded by the policy in question.
*544 We are also constrained to comment on the manner in which defendant offered its proofs on its motion for summary judgment. As we have noted, the critical documents, namely, the copy of the notice of cancellation and copies of the certificates of mailing, were merely annexed to its trial brief. The function of the brief is a written presentation of legal argument. Facts intended to be relied on which do not already appear of record and which are not judicially noticeable are required to be submitted to the court by way of affidavit or testimony. See R. 1:6-6. And see R. 4:46-2. At the very least, the motion should have been supported by an affidavit of an employee of the company who could attest that the copy of the notice was in fact a copy of the notice actually mailed to decedent and the loss payee, that the notices were mailed in envelopes corresponding to the post office certificates, and that the addresses were correct. These are not merely formal requirements. They go to the heart of procedural due process.
The summary judgment appealed from is reversed. We remand to the trial court for further proceedings.