261 N.J. Super. 259 (1993)
618 A.2d 877
THOMAS S. BALDYGA, PLAINTIFF-APPELLANT,
v.
ELLIOTT S. OLDMAN, M.D. DEFENDANT-RESPONDENT, AND S. PAUL COCCIA, M.D. DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued November 4, 1992.
Decided January 6, 1993.
*260 Before Judges MICHELS, BAIME and WALLACE.
Philip Tortoreti argued the cause for appellant (Garruto, Galex and Cantor, attorneys; Richard Galex, on the brief).
Peter J. McDonald argued the cause for respondent, (Ronca, McDonald & Hanley, attorneys; Mr. McDonald of counsel; Robert J. Kovacs, on the brief).
The opinion of the court was delivered by WALLACE, J.S.C. (temporarily assigned).
In this medical malpractice case, plaintiff, Thomas Baldyga, appeals from orders granting summary judgment in favor of defendant Elliott Oldman, M.D., and denying his motion for reconsideration. Plaintiff's complaint alleged that defendant negligently administered the drug tetracycline to him during childhood, resulting in permanent staining and discoloration of his adult teeth.
In response to defendant's summary judgment motion, plaintiff attempted to present his expert's letter report in opposition to defendant's motion after the time expired for the completion of discovery. The trial judge refused to consider the late submission and granted defendant's motion. We must determine whether such refusal constituted a mistaken exercise of discretion. We conclude that it does and reverse.

*261 I
Plaintiff was born on August 20, 1960. His adult teeth are permanently stained and discolored allegedly as the result of the administration of the drug tetracycline during childhood. For the first three years of his life, plaintiff was under the care of Dr. Paul Coccia, who is now deceased. From birth to age three, plaintiff was hospitalized on at least three occasions by Dr. Coccia for treatment of asthmatic bronchitis, fever, wheezing, and congestion. Plaintiff's mother does not know what medications he received during these hospitalizations.
Plaintiff was under the care of defendant from August 1963 until approximately 1976 or 1978. Plaintiff's mother has check registers and canceled checks endorsed by defendant indicating some treatment at various times. Additionally, a hospital admission record of plaintiff dated November 1963 indicates that defendant was plaintiff's physician. Plaintiff's mother stated in deposition testimony that from August 1963 through 1966 or 1967, defendant treated plaintiff with antibiotics. However, she did not know whether these were tetracycline based or non-tetracycline based antibiotics. Defendant has no medical records pertaining to plaintiff, and no independent recollection of treating plaintiff.
On December 26, 1989, plaintiff filed a medical malpractice suit against Dr. Coccia and defendant. Plaintiff alleged that during the course of their care and treatment, the doctors deviated from generally accepted medical practice by prescribing tetracycline or a tetracycline derivative to plaintiff which they knew or should have known could cause discoloration and damage to his permanent teeth. The complaint also alleged gross, willful, or wanton negligence, and sought compensatory and punitive damages, counsel fees, interest and costs of suit.
Defendant filed an answer to the complaint denying liability and asserting various affirmative defenses. Plaintiff voluntarily dismissed his claim against Dr. Coccia without prejudice by stipulation of dismissal dated January 7, 1991.
*262 Pursuant to an order of the trial judge dated April 19, 1991, plaintiff was deemed to have admitted that he did not know what, if any, antibiotic medication was administered to him by either Coccia or defendant, and did not know whether either doctor administered tetracycline or non-tetracycline based medication to him. Shortly thereafter, defendant filed a motion for summary judgment returnable on June 14, 1991.
In response to defendant's motion, on June 14, 1991 plaintiff moved for an order extending the discovery deadline, compelling defendant to attest by certification that he had no records pertaining to plaintiff, requesting permission to photograph and physically inspect defendant's records storage area, and requesting denial of defendant's motion for summary judgment without prejudice pending further discovery. The motion was supported by the certification of plaintiff's counsel, stating that additional time was needed to locate plaintiff's medical records and/or medical personnel who were involved in his care and treatment. The trial judge on July 26, 1991 granted the relief requested by plaintiff and extended discovery until August 31, 1991.
Prior to the discovery deadline, on August 13, 1991 defendant again moved for summary judgment based on plaintiff's failure of proof. Defendant argued in a supporting brief that plaintiff presented no evidence that he had prescribed tetracycline based antibiotics to plaintiff during his early childhood, or that his alleged tooth discoloration was due to tetracycline prescribed by defendant, as opposed to Coccia or another doctor. Defendant relied upon: 1) his own certification in which he stated that he had no records relating to the treatment of plaintiff or the administration of any medication to him; 2) the deposition testimony of plaintiff's mother stating Coccia had treated plaintiff for the first three years of his life; 3) plaintiff's responses to defendant's request for production of documents wherein he stated that he had no documents other than the canceled checks, check registers, and hospital record; and 4) plaintiff's *263 admissions stating that he did not know if defendant or Coccia ever administered tetracycline to him.
Plaintiff filed a brief in opposition to the motion on August 30, 1991, arguing that a disputed issue of fact remained as to whether defendant treated plaintiff and whether he prescribed tetracycline. Plaintiff further argued that since defendant did not retain treatment records, plaintiff could not reasonably be expected to have available the facts necessary to prove his case. Plaintiff therefore contended that the burden of proof should be shifted to defendant to prove that he did not prescribe the tetracycline. In support of his motion, plaintiff relied on the deposition testimony of his mother that plaintiff was treated by defendant for fifteen years, and the report of Dr. Steven G. Finden, D.D.S. stating that an examination of plaintiff "revealed tetracycline staining on his upper and lower teeth".
While the summary judgment motion was pending, plaintiff's counsel, by letter to the court dated September 5, 1991, requested that the case be adjourned for sixty days from the tentative trial date of September 11, 1991. Counsel explained that his medical expert was no longer available and that he was awaiting the report of another expert.
By letter to the court dated September 6, 1991, plaintiff submitted the report of Dr. Ira Feldman, D.M.D., and notified the court that he wished to rely on this report in opposition to defendant's summary judgment motion. Dr. Feldman stated in his September 6, 1991 letter report that "[w]ith reasonable dental certainty, it can be stated that Thomas received the drug tetracycline between the ages of 3 and 6." Plaintiff argued that since he was under defendant's care during that time, Feldman's report defeated defendant's motion for summary judgment.
On September 13, 1991, the trial judge held oral argument on the summary judgment motion. Defendant opposed plaintiff's request for adjournment, and argued that Feldman's report should not be considered by the court since it was untimely and *264 amounted to an inadmissible "net opinion". Additionally, defendant argued that the report was premised on a false assumption since Feldman had been told by plaintiff that he had received tetracycline, a fact admittedly unknown to plaintiff.
The trial judge declined to grant plaintiff's requested adjournment and instead granted summary judgment in favor of defendant, based on plaintiff's failure to come forward with evidence creating a genuine issue of material fact. The court refused to consider Dr. Feldman's report because it was submitted after the August 31, 1991 discovery deadline, contained hearsay, and was not in affidavit or testimony form. By order of September 13, 1991, the court dismissed plaintiff's complaint with prejudice and without costs.
By notice of motion dated September 23, 1991, plaintiff moved for reconsideration. In support of his motion, plaintiff relied on the certification of his counsel describing the circumstances under which Feldman's report was obtained, and an expanded supplemental report of Feldman dated September 24, 1991.
On October 11, 1991, the trial judge heard oral argument and denied plaintiff's motion for reconsideration. He stated that the motion was inappropriate because it did not bring to the court's attention matters that were overlooked, but instead reargued matters that plaintiff contended that the judge misconstrued. The trial judge reiterated that under R. 4:46-2 and R. 1:6-6, Feldman's report was required to be in either affidavit or testimony form, and suggested that the appropriate venue for relief was on appeal to the Appellate Division. An order denying plaintiff's motion for reconsideration was entered on that same date.

II
Summary judgment is appropriate if, viewing the record in the light most favorable to the non-moving party, the record demonstrates there was no material issues of fact and the *265 moving party is entitled to judgment as a matter of law. Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 73-75, 110 A.2d 24 (1954). "Where a moving party demonstrates a prima facie right to summary judgment, the opponent of a motion is required to show by competent evidential material that a genuine issue of material fact exist. Goldome Realty Credit Corp. v. Harwick, 236 N.J. Super. 118, 124, 564 A.2d 463 (Ch.Div. 1989). Facts which are intended to be relied upon in response to a motion which are not of record, and are not judicially noticeable, are required to be submitted in the form of affidavit or testimony. R. 4:46-2; R. 1:6-6; see Celino v. Gen. Accident Ins. Co., 211 N.J. Super. 538, 544, 512 A.2d 496 (App.Div. 1986) (disapproving of attaching insurance notice of cancellation to opposing brief which was not accompanied by certification attesting to authenticity of notice).
In the instant case, the court relied on Celino, supra, to exclude Feldman's report due to its form. The Celino court reversed summary judgment in favor of defendant where defendant attached critical documents to its brief without properly authenticating them by affidavit or certification. Id. at 544, 512 A.2d 496. The issue in Celino was an unsworn factual assertion made by a lay witness, and thus the court's holding was consistent with the language and intent of R. 1:6-6. The comments following the rule illustrate that its purpose is to ensure that fact witness testimony is based on personal knowledge rather than hearsay, and to eliminate the presentation of facts which are not of record by unsworn statement of counsel made in briefs and oral arguments. See Pressler, Current N.J. Court Rules, comment 1 on R. 1:6-6 (1992).
In this case, Dr. Feldman's report did not contain lay witness factual statements, but was instead expert opinion evidence submitted as an addendum to the record. Discovery materials, including answers to interrogatories, are not within the parameters of R. 1:6-6, as is made clear by the comment following the rule. Instead, R. 4:17-4 governs the form, service and time of *266 answers to a party's interrogatory requests. R. 4:17-4(e) specifically deals with expert or treating physician's reports, and provides that an exact copy of an expert's report must be annexed to the interrogatory. There is no requirement under R. 4:17-4(e) that an expert physician's report must be submitted in the form of affidavit or testimony.
Had Feldman's report been timely submitted to defendant in the ordinary course of the litigation as a response to the standard request for the names of expert witnesses and the substance of their opinion, it would have properly been before the court as part of the record for purposes of deciding the motion. See Pabon v. Hackensack Auto Sales, Inc. 63 N.J. Super. 476, 494, 164 A.2d 773 (App.Div. 1960) (Interrogatory answers formed part of assembled proofs and were properly considered as evidence in passing on motion to dismiss.); see also Cosgrove v. Lawrence, 215 N.J. Super. 561, 563, 522 A.2d 483 (App.Div. 1987) (Summary judgment may be inappropriate where factual issues are raised by the record, including expert opinions).
The trial judge also stated that he would not consider the report because it contained hearsay. Although he did not specify what portion of the report was hearsay, it appears the trial judge was referring to plaintiff's statement made to Dr. Feldman that he was given tetracycline. Since plaintiff admitted he had no first hand knowledge of this fact, it may reasonably be assumed that he was relating Dr. Finden's earlier diagnosis that his teeth exhibited tetracycline staining. We note however, that Dr. Feldman's report was also based on his own observation and examination of plaintiff, which revealed that plaintiff's teeth exhibited "characteristic banding" associated with tetracycline. An expert may legitimately use hearsay evidence to confirm an opinion which he reached by independent means. State v. Humanik, 199 N.J. Super. 283, 305, 489 A.2d 691 (App.Div. 1985) (citations omitted) (Psychiatrist allowed to testify regarding mental state of defendant based on hearsay *267 statements of defendant contained in a letter), certif. denied, 101 N.J. 266, 501 A.2d 934 (1985), cert. denied sub nom. Beyer v. Humanik, 493 U.S. 812, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989).
The trial judge principally refused to consider Dr. Feldman's report because it was submitted after the close of discovery and while the motion for summary judgment was pending. In Sholtis v. Am. Cyanamid Co., 238 N.J. Super. 8, 568 A.2d 1196 (App.Div. 1989), a case very similar to this one, we held it was a mistaken exercise of discretion to refuse to consider supplemental affidavits from fact witnesses submitted by plaintiffs in opposition to a summary judgment motion after discovery was completed and while the motion for summary judgment was pending. The affidavits represented both newly discovered evidence and evidence that was inadvertently omitted when plaintiffs filed their brief in opposition to the motion. Id. at 16-17, 568 A.2d 1196. The trial judge would not consider the affidavits, explaining: "`You did not ask me and, therefore, I did not agree to accept either supplemental or additional affidavits from fact witnesses ... it is that [the original] record upon which I must base my decision.'" Id. at 17, 568 A.2d 1196.
In reversing summary judgment and reinstating the plaintiffs' complaints, the court reasoned that:
[A] trial is a search for the truth, and ... a judge should approach summary judgment motions with a predisposition to acting only with all reasonably determinable information in hand. A trial judge has discretion to permit supplemental affidavits to be submitted on summary judgment motions. But this discretion should be exercised to increase, not limit, the likelihood that the information before the court reflects the facts that could be adduced at trial. Even as late as trial, previously undisclosed witnesses may be produced where the failure to supply the witness' "name in answers to interrogatories was not the result of a design to mislead and where there is no surprise or prejudice to the opposing party if the testimony is allowed." If such latitude is to be afforded an erring party even at trial, this principle is even more applicable to affidavits submitted in response to a summary judgment motion.
Id. at 17-18, 568 A.2d 1196 (citations omitted); see also Tyler v. N.J. Automobile Full Ins., 228 N.J. Super. 463, 468, 550 A.2d 168 (App.Div. 1988) ("It is a mistaken exercise of judgment to close the courtroom doors to a litigant whose opposition papers *268 are late but are in the court's hands before the return day for a motion which determines the meritorious outcome of a consequential lawsuit.")
In this case, on September 5, 1991, plaintiff requested a postponement for additional time to receive his expert's reports which he expected to have within ten days. In fact, he submitted the report of Dr. Feldman the following day on September 6, 1991. Viewing the record with all factual inferences in favor of plaintiff as the non-moving party, the information supplied in Dr. Feldman's report would have preserved plaintiff's cause of action. Dr. Feldman's report presented evidence that plaintiff received tetracycline sometime between ages three and six. Thus, the report provides a circumstantial link between defendant and the alleged injury. We agree with the statement in Sholtis, supra, 238 N.J. Super. at 18, 568 A.2d 1196, that "strict adherence to the schedules established by the court for discovery and presentation of opposing papers would take too great a toll."
Under these circumstances the trial judge should have granted a reasonable postponement to receive the full report of Dr. Feldman and any reply certification by defendant. We hold the exclusion of Dr. Feldman's report was error.

III
Plaintiff also contends that the trial judge erred by failing to shift the burden of proof to defendant to show that he did not prescribe tetracycline to plaintiff during his childhood. However, in the grant of summary judgment in favor of defendant, the trial judge did not rule on plaintiff's request to shift the burden of proof. Therefore, we reach no decision on this issue. At trial, the trial judge should determine the proper charge to the jury, which may or may not include an instruction shifting the traditional burden of proof.
*269 We reverse the grant of summary judgment in favor of defendant and reinstate the complaint. The matter is remanded to the Law Division for trial. We do not retain jurisdiction.