**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1637-15T4

JOSHUA MCLAURIN,

    Plaintiff-Appellant,

v.

GENERAL NUTRITION CENTERS,
INC. AND GENERAL NUTRITION
CORPORATION,

    Defendants-Respondents.

_____

Submitted March 8, 2017 — Decided  May 25, 2017

Before Judges Simonelli and Gooden Brown.

On appeal from the Superior Court of New
Jersey, Law Division, Sussex County, Docket
No. L-0490-13.

Morris, Downing & Sherred, LLP, attorneys for
appellant (Paul G. Hunczak, of counsel and on
the briefs; Douglas C. Gray, on the briefs).

Margolis Edelstein, attorneys for respondents
(Emery J. Mishky, of counsel; Victoria J.
Adornetto, on the brief).

PER CURIAM

In this employment matter, plaintiff Joshua McLaurin asserted claims against defendants General Nutrition Centers, Inc. and General Nutrition Corporation (collectively GNC) under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, for failure to accommodate, wrongful termination, failure to engage in the interactive process, and retaliation. Plaintiff alleged he had requested a one-month medical leave "for medical stabilization of a mental health condition and treatment of a knee injury," and was terminated "because of his temporary disabilities and/or because of his request and need for a temporary leave to seek treatment for these disabilities."

The trial court granted summary judgment to GNC, finding that plaintiff showed he had a disability for purposes of the LAD, but failed to show he requested an accommodation. We disagree with the court's first finding, but agree with the second. Accordingly, we affirm.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (citation omitted). Thus, we consider, as the trial court did, "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are

sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007), certif. denied, 195 N.J. 419 (2008)). We review issues of law de novo and accord no deference to the trial judge's conclusions on issues of law. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

Because the court's ruling in this case involved an issue of law, our review is de novo. On de novo review, we are not bound by the trial's court's factual findings and conclusions and may make our own findings and conclusions based upon the record below. Grasso v. Borough Council of Glassboro, 205 N.J. Super. 18, 25 (App. Div. 1985), certif. denied, 103 N.J. 435 (1986). Accordingly, we derive the following facts from our de novo review of the evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to plaintiff. Angland v. Mountain Creek Resort,

Inc., 213 <u>N.J.</u> 573, 577 (2013) (citing <u>Brill</u>, <u>supra</u>, 142 <u>N.J.</u> at 523).

In 2009, plaintiff's treating physician, Anthony DePaola, M.D., diagnosed him with anxiety disorder and began prescribing Xanax on an as-needed basis for panic attacks. In 2010, Dr. DePaola treated plaintiff for a right knee injury.

On November 20, 2012, plaintiff began his employment with GNC as a part-time sales associate at a store in Montague. The record does not reveal that plaintiff notified GNC of his mental health or physical condition. Plaintiff claimed that he re-aggravated his knee injury in early 2013, but the record does not reveal he notified GNC of this event.

In January 2013, plaintiff was promoted to store manager and began a ninety-day probationary period. He began taking Xanax every day for panic attacks.

On March 15, 2013, plaintiff closed the store during business hours without GNC's approval. GNC's disciplinary policy provided that an employee was subject to discharge for an unauthorized closing of a store without proper, advance notification. When confronted about the store closure, plaintiff said he was allergic to bees and there were bees in the store. Because GNC Human Resources personnel considered an allergy to bees an extenuating circumstance, plaintiff was not discharged. However, subsequent

inspections by a pest control company did not reveal any live bee or wasp activity inside the store, and plaintiff admitted during his deposition that he was not allergic to bees. Nonetheless, GNC did not discharge him for the unauthorized store closing.

Plaintiff was scheduled to be off from work on March 16 and 17, 2013. He claimed that by March 17, 2013, he was suffering from twice-weekly panic attacks and constant knee pain, and decided he needed immediate treatment. On March 17, 2013, he advised his direct supervisor, Joseph Zaijek, that he would be absent from work on March 18, 2013, because he was sick and in need of a doctor, and that he had arranged for coverage for the store and would keep Zaijek updated. Plaintiff also advised his manager, John Tosar, of his absence. The record does not reveal that plaintiff advised Zaijek or Tosar of the nature and extent of his illness.

GNC's attendance policy required employees who were absent for five or more consecutive scheduled work days to submit a doctor's note to their supervisor as a prerequisite to return to work. On March 18, 2013, Tosar contacted plaintiff to inquire about plaintiff's return to work. Plaintiff responded, "[u]nsure at the moment it is pending due to my medical condition." Tosar advised plaintiff that he could not return to work unless he provided a doctor's note one day before returning.

A-1637-15T4

On March 19, 2013, plaintiff advised GNC's human resources manager, Charmelle Hall, that he planned to return to work by March 22, 2013. Hall reminded plaintiff he had to submit a doctor's note authorizing him to return to work. Plaintiff said he would submit a doctor's note by March 21, 2013.

Plaintiff saw Dr. DePaola on March 21, 2013. That same day, plaintiff faxed to Tosar and Hall a copy of a note handwritten on Dr. DePaola's prescription pad that did not clear plaintiff to return to work on March 22, 2013. Rather, the note indicated that plaintiff would be out of work indefinitely. The note stated "Excuse [plaintiff] from work 3/18/13 thru 4/20/13 when he will be reevaluated." Plaintiff provided no other medical documentation to GNC and did not authorize or ask Dr. DePaola to communicate with GNC. Plaintiff admitted that he never affirmatively communicated to GNC that he was suffering, or had previously suffered, from a physical or mental health disability. He also admitted that prior to leaving work on March 15, 2013, he never requested any specific, special accommodation for a physical or mental health condition.

Hall advised plaintiff that he was not eligible for benefits under the Family Medical Leave Act, and that his job was not protected and he could contact Tosar for re-hiring. On March 25, 2013, GNC issued a Separation Report, which indicated that

plaintiff had voluntarily resigned for medical reasons, effective March 15, 2013. The report recommended plaintiff's re-hiring. Plaintiff never contacted GNC to be rehired. Instead, on September 11, 2013, he filed a complaint in the Law Division.

Despite GNC's discovery demands, plaintiff did not produce documents he intended to rely on at trial, identify fact or expert trial witnesses, or produce expert reports. Following the close of discovery, GNC filed a motion for summary judgment, arguing that plaintiff failed to prove he had a disability or that he had requested an accommodation.

In opposition, plaintiff appended Dr. DePaola's March 21, 2013 office notes to his opposition brief with no supporting affidavit from the doctor authenticating the documents. The office notes indicated that plaintiff saw Dr. DePaola on March 21, 2013, complaining of knee pain, anxiety, panic attacks, depression, frequent crying, mood changes, and nervousness, and that the treatment plan was for plaintiff to be out of work from March 18 to April 20, 2013.

At oral argument, plaintiff's counsel represented that Dr. DePaola would testify at trial. However, plaintiff did not amend his discovery responses to identify the doctor as a fact or expert witness, and did not produce an expert's report. We reject plaintiff's argument on appeal that he had no obligation to provide

this information because GNC did not submit Rule 4:17-4(e) interrogatories. In its request for the production of documents, GNC specifically requested documents plaintiff intended to rely upon at trial; reports of any experts he intended to call at trial; and a list of trial witnesses and a summary of the facts their testimony would establish. Plaintiff did not provide this information in his response to the document demand, and did not amend his responses. See R. 4:18-1(b)(3).

We also reject plaintiff's argument that Dr. DePaola could testify at trial as his treating physician. "[I]n an appropriate setting, the testimony of a treating physician may be admitted to support a plaintiff's LAD disability claim, provided that the proponent of the testimony provides notice and responds to discovery requests in accordance with the court rules, and the testimony satisfies N.J.R.E. 701 and other applicable Rules of Evidence." Delvecchio v. Twp. of Bridgewater, 224 N.J. 559, 580 (2016) (emphasis added) (citations omitted). Plaintiff provided no notice that Dr. DePaola would testify at trial and did not respond to GNC's discovery requests for this information.

Relying on Dr. DePaola's office notes appended to plaintiff's brief, the court gave plaintiff all favorable inferences and found plaintiff showed he had a disability for purposes of the LAD. This was error.

Rule 4:46-5 provides as follows, in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the pleading, <u>but must respond by affidavits meeting the requirements of [Rule] 1:6-6 . . . setting forth specific facts showing that there is a genuine issue for trial</u>.
>
> [(Emphasis added).]

Rule 1:6-6 requires facts not appearing of record or not judicially noticeable to be supported by "affidavits made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify[.]"

Appending documents to a brief with no affidavit or testimony properly authenticating them does not constitute compliance with Rule 1:6-6. Celino v. General Accident Ins., 211 N.J. Super. 538, 544 (App. Div. 1986) (noting that critical documents which are alleged to support facts upon which a motion for summary judgment is based must be submitted "to the court by way of affidavit or testimony"). Moreover, counsel's presentation of facts which are neither of record, judicially noticeable, nor stipulated, by way of statements in a supporting brief and oral argument do not constitute cognizable facts. See Gonzalez v. Ideal Tile Importing Co., 371 N.J. Super. 349, 358 (App. Div. 2004), aff'd, 184 N.J. 415 (2005).

Here, there was no affidavit or testimony from Dr. DePaola authenticating his handwritten note and office notes, as required by Rule 1:6-6. Accordingly, the record lacked competent evidence to support a finding that plaintiff had a disability under the LAD. Summary judgment in GNC's favor was appropriate on this basis. Even if Dr. DePaola had authenticated his handwritten note and office notes, summary judgment was still appropriate.

The LAD prohibits employment discrimination on the basis of a disability "unless the nature and extent of the disability reasonably precludes the performance of the particular employment." N.J.S.A. 10:5-4.1; see also Potente v. County of Hudson, 187 N.J. 103, 110 (2006). To establish a prima facie case of handicap discrimination, the plaintiff must show that: (1) he or she was handicapped or disabled within the meaning of the LAD; (2) he or she was qualified to perform the essential functions of the position of employment, with or without accommodation; (3) he or she suffered an adverse employment action because of the handicap or disability; and (4) the employer sought another to perform the same work after plaintiff had been removed from the position. Gerety v. Atlantic City Hilton Casino Resort, 184 N.J. 391, 399 (2005).

In order to survive a motion for summary judgment arising out of a claim of disability discrimination, a plaintiff must establish

a prima facie case of discrimination with proof, in the first instance, of a disability. Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 597 (1988). Failure to establish the existence of a disability is fatal to a claim of disability discrimination irrespective of proof of the remaining elements of a disability discrimination claim. See Viscik v. Fowler Equip. Co., 173 N.J. 1, 15 (2002) (noting "the threshold inquiry in a handicapped discrimination discharge case is whether the plaintiff in question fits the statutory definition of 'handicapped'").

Under N.J.S.A. 10:5-5(q), there are two specific categories of handicap: physical and non-physical. The physical and non-physical clauses of the statute are distinct from each other and provide separate ways of proving handicap. Ibid. To prove a physical handicap, a plaintiff must prove that he or she has a "physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness . . . which prevents the normal exercise of any bodily . . . functions or is demonstrable, medically . . . by accepted clinical or laboratory diagnostic techniques." N.J.S.A. 10:5-5(q) (emphasis added). To prove a non-physical handicap

> a plaintiff must prove that he or she is
> suffering (1) from any mental, psychological
> or developmental disability (2) resulting from
> an anatomical, psychological, physiological
> or neurological condition that either (a)

> prevents the normal exercise of any bodily or mental functions or (b) is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques.
>
> [Viscik, supra, 173 N.J. at 16 (citations omitted).]

"A plaintiff claiming a mental disability has the burden to prove that disability. 'Where the existence of a handicap is not readily apparent, expert medical evidence is required.'" Wojtkowiak v. N.J. Motor Vehicle Comm'n, 439 N.J. Super. 1, 15 (App. Div. 2015) (quoting Viscik, supra, 173 N.J. at 16); see also Clowes, supra, 109 N.J. at 597 (rejecting a plaintiff's disability claim because there was no expert medical evidence he was an alcoholic). "Similarly, a plaintiff has the burden to show the extent of the mental disability if the extent is relevant to the accommodations requested or offered." Wojtkowiak, supra, 439 N.J. Super. at 15.

Dr. DePaola's handwritten note and office notes did not prove that plaintiff had a disability under the LAD. The documents did not confirm that plaintiff had a physical disability that prevented the normal exercise of any bodily functions, or was verifiable medically by accepted clinical or laboratory diagnostic techniques. The documents also did not confirm the nature or extent of plaintiff's alleged mental disability, or that this disability prevented the normal exercise of any mental functions.

N.J.S.A. 10:5-5(q). Accordingly, plaintiff failed to prove he had a disability under the LAD. Summary judgment in GNC's favor, therefore, was appropriate.

For the sake of completeness, we address plaintiff's failure to accommodate claim. Under the LAD, an employer has an obligation to attempt to reasonably accommodate an employee's physical or mental disability. Raspa v. Office of Sheriff of County of Gloucester, 191 N.J. 323, 339 (2007). This obligation is only triggered when the employer is made aware of the handicap and the employee requests an accommodation. Tynan v. Vicinage 13 of the Superior Court of N.J., 351 N.J. Super. 385, 400-01 (App. Div. 2002). The request need not be in writing and the employee is not required to utter the words "reasonable accommodation." Id. at 400. However, the request must be sufficiently clear that it conveys to the employer the employee's request that an accommodation be attempted to address the employee's disability. Id. at 400. Once the employee has conveyed the accommodation request to the employer, "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." Ibid. (citation omitted).

Plaintiff admitted that he never affirmatively communicated to GNC that he was suffering, or had previously suffered, from a physical or mental health disability. He also admitted that prior

to leaving work on March 15, 2013, he never requested any specific, special accommodation for a physical or mental health condition. Dr. DePaola's handwritten note conveyed that plaintiff required a month off from work, but it did not make GNC aware of any physical or mental disability that required GNC to provide an accommodation under the LAD. Consequently, plaintiff's accommodation claim fails as a matter of law.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1637-15T4