**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2538-23

MARC FEDER DMD, PC
and MARC FEDER,

     Plaintiffs-Appellants,

v.

NEW JERSEY
MANUFACTURERS
INSURANCE COMPANY,

     Defendant-Respondent.

_____

> Argued April 7, 2025 – Decided April 21, 2025
>
> Before Judges Sabatino, Jacobs, and Jablonski.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1485-22.
>
> Jeffrey A. Bronster argued the cause for appellants.
>
> Daniel J. Pomeroy argued the cause for respondent (Pomeroy, Heller & Ley, DiGasbarro & Noonan, LLC, attorneys; Daniel J. Pomeroy and Karen E. Heller, on the brief).

PER CURIAM

This declaratory judgment action revolves around whether an insurance company complied with the statutory procedures for cancelling an automobile insurance policy. Plaintiff Mark Feder[1] failed to pay his overdue insurance premium of $378.00 to defendant New Jersey Manufacturers Insurance Company ("NJM"), so NJM took steps to cancel his policy. The steps are prescribed in N.J.S.A. 17:29C-10, which has two distinct requirements in subsections (a) and (b):

> No written notice of cancellation or of intention not to renew sent by an insurer to an insured in accordance with the provisions of an automobile insurance policy shall be effective unless
>
> a. (1) it is sent by certified mail or (2) at the time of the mailing of said notice, by regular mail, the insurer has <u>obtained from the Post Office Department a date stamped proof of mailing showing the name and address of the insured, and</u>
>
> b. the insurer has <u>retained a duplicate copy of the mailed notice which is certified to be a true copy</u>.
>
> [Emphasis added.]

After considering the documentation supplied by NJM and plaintiff's arguments in opposition, the trial court granted NJM summary judgment. Based

---

[1] For simplicity, we will refer to Mark Feder as "plaintiff" in this opinion even though his professional business, Mark Feder DMD, PC, is named as a co-plaintiff.

A-2538-23

on the face of the documents before it, which were not illuminated by any NJM testimony at a deposition or a plenary hearing, the court concluded NJM complied with both subsections (a) and (b) of the statute in cancelling plaintiff's policy. Plaintiff appeals, contending NJM's submissions were inadequate to prove its compliance.

For the reasons that follow, we affirm the trial court's ruling in part and vacate it in part. Specifically, we concur with the court's determination that, as a matter of the law, the record sufficed to establish NJM's compliance with subsection (a) of N.J.S.A. 17:29C-10 concerning proof of its mailing to plaintiff. However, we vacate summary judgment as to subsection (b), which was construed by our opinion in Celino v. General Accident Insurance, 211 N.J. Super. 538, 543 (App. Div. 1986) to require the insurer prove that, at the time of the mailing, it "contemporaneously" certified that it was retaining a "true" duplicate copy of the cancellation notice.

As we elaborate, infra, the cancellation notice and other documents supplied in the motion record presently lack sufficient information to establish who certified those crucial facts under subsection (b) and when they were so certified. The alleged duplicate of the cancellation notice also contains various unexplained handwritten notations with several dates, which may bear upon the

3

analysis.

When viewed in a light most favorable to plaintiff in this summary judgment posture, the present record lacks sufficient evidence of personal knowledge of subsection (b) compliance with respect to plaintiff's cancellation notice. See N.J.R.E. 602 and Rule 1:4-4. Nor, alternatively, does the present record substantiate conclusively NJM's routine practices concerning its subsection (b) compliance. See N.J.R.E. 406. In sum, there are genuine issues of material fact that are not capable of resolution on the existing record.

Given that Celino and other case law insists on insurers' strict compliance with the requirements of N.J.S.A. 17:29C-10, and because the record here must be developed more fully and clearly to adjudicate NJM's compliance as to subsection (b) of that statute, we vacate summary judgment and remand this matter to the trial court for further proceedings.

I.

To provide context to our discussion, we first provide a brief overview of the statutory scheme and the public policies that underlie N.J.S.A. 17:29C-10. The statute has been amended at various times until its present form.

The laws of our state have long required the owners of private passenger vehicles to maintain coverage from an automobile insurance company. N.J.S.A.

39:6A-3. As a matter of public policy, such coverage is important for the protection of drivers and their passengers who use our roadways, as well as for pedestrians and the occupants of other vehicles who may be injured by the insured driver's conduct. See, e.g., Rutgers Cas. Ins. Co. v. LaCroix, 194 N.J. 515, 523-24 (2008).

Given those public policy concerns, the Legislature and our case law have imposed strict requirements upon automobile insurers to provide reasonable notice to vehicle owners before cancelling their coverage for non-payment. The cancellation of coverage can have severe consequences. Our laws therefore strive to assure that motorists are provided with fair warning that their policies are about to be cancelled, and a grace period to make delinquent payments in order to maintain coverage. See N.J.S.A. 17:29C-8. At the same time, the Legislature and our courts have recognized that the procedures for auto insurers to cancel coverage should not be unduly burdensome.

Before it was amended in 1980, the cancellation statute provided that, "[p]roof of mailing of notice of cancellation to the named insured at the address shown in the policy, shall be sufficient proof of notice." N.J.S.A. 17:29C-10 (amended 1980). In Weathers v. Hartford Ins. Grp., 77 N.J. 228 (1978), the Supreme Court construed that language to signify that "cancellation may be

effective whether or not the insured has actually received the notice of cancellation since proof of mailing, not proof of receipt, is the determinative factor." Id. at 234. Nonetheless, the Court concluded the insurer's proof of its mailing of the cancellation notice to the insured in that case, while "sufficient to go to the fact-finder on the issue . . . did not compel a finding of mailing as a matter of law." Id. at 235. Among other things, the Court noted that the insurer's witness "conceded it was possible that a given envelope might not contain a notice to the person purportedly addressed." Ibid.

After the Court's decision in Weathers, the Legislature amended N.J.S.A. 17:29C-10 in 1980 to provide clearer guidelines for appropriately evidencing "proof of mailing" by requiring at least a date-stamped proof of mailing and— as is pertinent to our decision on this appeal—a certified copy of the mailed letter. See S. Lab., Indus. and Pros. Comm. Statement to Assemb. No. 1418 L.1980, c. 165 (Apr. 14, 1980) ("This bill is designed to make the proof of mailing requirement more explicit.").

Case law has since clarified what evidence is sufficient to satisfy each of the two subsections of N.J.S.A. 17:29C-10. With respect to subsection (a), which concerns "the manner of delivering the written [cancellation] notice to the insured," we observed in Celino that the provision "can be satisfied either

by certified mailing <u>or</u> by the [insurer's] obtaining of a date-stamped certificate of mailing from the post office." 211 N.J. Super. at 541 (emphasis added).

We elaborated upon subsection (a)'s requirements in <u>Hodges v. Pennsylvania National Insurance Co.</u>, 260 N.J. Super. 217 (App. Div. 1992), in which we concluded that a "master list" of cancellation letters that an insurer supplied to the post office, coupled with a dated postal stamp on that master list, were insufficient to comply with subsection (a). <u>Id.</u> at 227. We held that the insurer needed to present either an official "certificate of mailing" issued by the post office to show that each individual letter was actually mailed, or, alternatively, "extrinsic evidence" that demonstrated that fact. <u>Ibid.</u> Because the insurer's "present proofs" were insufficient to demonstrate compliance with the statute, we reversed summary judgment in favor of the insurer and remanded for further proceedings. <u>Ibid.</u>

By contrast with the inconclusive proofs of mailing in <u>Hodges</u>, we held in <u>Ward v. Merced</u>, 277 N.J. Super. 590, 593-94 (App. Div. 1994), that a twenty-one-page official certificate of mailing from the post office that listed the names and addresses of each insured who was sent a cancellation notice complied with subsection (a). Thereafter, in <u>Public Service Electric & Gas v. Uphold</u>, 316 N.J. Super. 168 (App. Div. 1998), we likewise concluded that an insurer's proof of

mailing under subsection (a) was met by a date-stamped certification from the post office.  Id. at 172.

Subsection (b) of N.J.S.A. 17:29C-10, meanwhile, imposes an additional requirement:  that the insurer demonstrate it "has retained a duplicate copy of the mailed notice which is certified to be a true copy."  This independent requirement was meticulously interpreted and explained by Judge Pressler's opinion in Celino, 211 N.J. Super. at 543.  In that case, an auto insurer conceded that it had not complied with subsection (b) but argued that the non-compliance was "inconsequential."  Id. at 541.  We rejected that argument and instead underscored the importance of subsection (b), declaring that its compliance "is a sine qua non of an effective cancellation. . . based not only on the plain language of the statute but on its history and evident intention."  Ibid.

Judge Pressler's opinion in Celino elaborated the requirements of subsection (b) as follows:

> As we therefore construe the statutory condition of a retained certified duplicate copy, it is designed to ease the carrier's proof of mailing burden imposed by Weathers by providing it with a simple, expedient and effective alternative to reliance on standard practice in sending notices.  This alternative is its retention of a duplicate copy of the notice, certified to be a true copy. But as we understand the intent of the statute, this mechanism requires that the duplicate be certified as a true copy contemporaneously with preparation and

mailing of the original. The whole point of the requirement is to permit a clerical employee or other custodian of the business record to testify that the file copy is known to be a true copy of the mailed document because the person mailing it so certified at that time.

[Id. at 543 (emphasis added).]

Judge Pressler then punctuated the importance of a contemporaneous certification:

The added weight of the evidence thus afforded to the file copy is therefore clearly dependent on a contemporaneous certification. A certification made later would be hardly more than an in-house version of standard practice proof.

[Ibid. (emphasis added).]

Our subsequent opinion in Uphold, 316 N.J. Super. at 173 reiterated these requirements of subsection (b), specifically reinforcing the need for a contemporaneous certification attesting that a duplicate copy of the cancellation notice retained by the insurer matched the contents of the notice that had been mailed to the insured. We determined in Uphold that the insurer's proofs were inadequate because it was unclear from the deposition testimony of the insurer's witness whether the copy in its file "was a copy generated contemporaneously with the notice allegedly mailed to [the insured], and not a subsequently generated copy." Ibid. It was also plain from her testimony "that the date and

the signature on the certification of the 'true' copy were affixed at different times, by different people, and that at least the date was entered a day or more after the date stamped by the post office on its certificate of mailing." Ibid. Even so, we ratified the insurer's cancellation in Uphold because the insured had not disputed his receipt of the notice. Id. at 174.

II.

With this statutory and case law background in mind, we turn to the motion record in this case. That record contains the following incomplete factual and procedural background relevant to the analysis of NJM's compliance in this case with subsections (a) and (b) of N.J.S.A. 17:29C-10.

The Collision

On July 23, 2020, plaintiff was driving a car registered to his business when he was involved in a collision in which his car rear-ended another vehicle. When plaintiff attempted to file a claim with NJM relating to the collision, he was informed he was not covered because his policy had been cancelled for nonpayment of premium nearly seven months earlier, on December 31, 2019. Plaintiff contends he was unaware of the cancellation of the policy.

Plaintiff's Apparent Failure to Pay the NJM Auto Premiums

The NJM business auto policy had been issued to plaintiff's professional

corporation, covering the vehicle for the policy period of August 13, 2019, to August 13, 2020. The policy address on the NJM business auto policy was plaintiff's home address.

Pretrial discovery, which included the depositions of plaintiff and his wife, established that plaintiff alone handled the bills including insurance matters for his household. In his deposition, plaintiff testified that he normally received NJM bills via mail at his home address, but he had no recollection of paying NJM bills in October or November of 2019. The insurer's records reflect that plaintiff had not made a payment since October 14, 2019.

As a result of plaintiff's nonpayment, NJM contends that on November 30, 2019, it sent a "Final Request for Payment Before Notice of Cancellation" to plaintiff's home address, making a final request for the outstanding payments. This document advised that if payment was not received within one week, a Notice of Cancellation would be issued. Plaintiff did not make any further payments on his business auto policy.

Cancellation Notices

NJM contends that on December 13, 2019, it issued a cancellation notice to plaintiff. The text of the notice purportedly sent to plaintiff stated that "CANCELLATION of the policy or policies described above will become

effective on December 31, 2019 at 12:01 a.m., E.S.T."  It also noted that payment of the past due amount of $378.00 prior to the cancellation effective date could keep the policy current.  Due to the continued non-payment, NJM deemed the business auto policy cancelled effective December 31, 2019, nearly seven months before the July 23, 2020 car accident at issue.

Alleged Mailing of the Cancellation Notice

NJM submitted three certifications and other documents to attempt to establish procedures that it contends it followed in mailing the cancellation notice in question.  The main focus of the certifications was on NJM's compliance with subsection (a) of the statute relating to the mailing, with only limited attention to subsection (b).

The cancellation notice, allegedly mailed to plaintiff on December 13, 2019, was one of 147 cancellation notices pertaining to personal and commercial auto insurance policies that NJM contends it sent to various policyholders that day.

NJM employee Judy D'Orazio certified that on December 13, 2019, the date of the alleged mailing, she confirmed that each piece of mail listed on what is described as the proof of mailing "register" was accounted for.  She confirmed that she made slash marks visible in the left-hand column of the register as she

12

verified the presence of each corresponding piece of mail. After each of the envelopes was accounted for, D'Orazio initialed the register. Notably, however, D'Orazio's certification did not certify or provide information about the contents of the envelopes.

D'Orazio's certification further attested that the mailing was then taken to the Post Office by an NJM stockroom employee, Daniel Johnston, who also signed the proof of mailing register.

The proof of mailing register bears a stamped receipt reflecting payment of $60.27. That stamp reflects receipt by the Post Office of 147 pieces of mail and payment by NJM of the $0.41 "fee" for each of the 147 pieces of mail. The actual postage, either $0.50 or $0.65 per piece, was apparently paid separately.

NJM also submitted a purported copy of the cancellation notice that bears the typewritten undated and unsigned notation, "certified to be a true copy, original mailed December 13, 2019." We will describe that document in more detail, infra.

The Claims of the Injured Parties

Occupants of the other vehicle involved in the July 23, 2020 collision sued plaintiff for their personal injuries. As noted above, when plaintiff contacted NJM to file a claim, he learned that his policy had been cancelled and that NJM

13

would not provide coverage. Eventually, plaintiff paid a settlement to the injured parties from his own funds. He seeks indemnification from NJM for the amount of the settlement.

This Declaratory Judgment Action

Plaintiff filed the present complaint in the Law Division against NJM in March 2022. The complaint sought a declaratory judgment determining that, on the date of the collision, plaintiff's car was covered under a policy issued by NJM, and that NJM's purported cancellation of that policy had been ineffective. Plaintiff also sought monetary damages arising from the coverage denial. The complaint made a jury demand. In its answer, NJM denied plaintiff's claims and asserted it had duly cancelled plaintiff's policy. NJM also asserted a jury demand.

At the close of discovery, NJM moved for summary judgment. Plaintiff opposed the motion and cross-moved for partial summary judgment, limited to the issue of liability for coverage.

NJM submitted to the motion judge the abovementioned certification of D'Orazio. NJM also submitted a certification from Sheryl Fay, a claims attorney employed by NJM, who provided her understanding of NJM's general mailing procedures, albeit not specifically based on any direct knowledge of the mailing

14

to plaintiff that is in dispute. In her certification, Fay explained the meaning of several of the exhibits, including the post office stamp on the proof of mailing register. Fay explained that the postage is not reflected in the post office stamp because "the documents reflected in the mailing list (Exhibit J) would have been printed by [the] department at NJM known as 'Postal & Print,' and that department is where postage would have been applied to each such mailing." Fay did not, however, comment on the certification language typewritten on the cancellation notice that relates to the retention of a true duplicate copy of the notice.

NJM also provided the motion judge with a certification of Karen Heller, an attorney with the law firm representing NJM in this matter, who attached various exhibits but did not attest that she had personal knowledge of the contents.

The Motion Judge's Ruling

After hearing oral argument, the motion judge issued a decision on March 15, 2024, granting NJM's motion for summary judgment and denying plaintiff's cross motion. In essence, the judge concluded that NJM had met its burden of establishing compliance with both subsections of N.J.S.A. 17:29C-10. The judge discerned no genuine issues of material fact that required further

proceedings.

<u>This Appeal</u>

This appeal by plaintiff ensued.  Fundamentally, he makes three points: (1) the cancellation notice was ineffective because NJM has not presented sufficient proof that he actually received the cancellation notice; (2) the documents presented by NJM fall short of establishing its compliance with subsection (a) of N.J.S.A. 17:29C-10; and (3) the documents also fail to establish NJM's compliance with subsection (b) of the statute.

## III.

In reviewing the trial court's summary judgment ruling, we apply familiar principles of law and appellate review.  <u>Rule</u> 4:46-2(c) provides that a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  <u>See also</u> <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 N.J. 520, 528-29 (1995).  "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  <u>Rios v. Meda Pharm., Inc.</u>, 247 N.J. 1, 13 (2021) (quoting <u>Brill</u>, 142 N.J. at 540).  To decide whether

16

<span style="float:right">A-2538-23</span>

a genuine issue of material fact exists, the court must "draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016). Here, because plaintiff lost the summary judgment motion filed by NJM, we must view the motion record in a light most favorable to him.

It is also well settled that appellate courts review the trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

With these principles in mind, we examine plaintiff's three arguments concerning the handling of cancellation notice.

A.

We readily dispense with plaintiff's argument that the policy cancellation was ineffective because NJM has not proven he actually received the cancellation notice in the mail. That legal argument has been expressly rejected by the courts. See, e.g., Hodges, 260 N.J. Super. at 222-23 ("An insured need not actually receive a cancellation notice in order for it to be effective, provided that the statutory proof of mailing has been satisfied."); Lopez v. New Jersey Auto. Full Ins. Underwriting Ass'n, 239 N.J. Super. 13, 23 (App. Div. 1990) ("If

17

the offer to renew was mailed, it is irrelevant that plaintiff claims not to have received the notice."). Moreover, the argument clashes with the text of N.J.S.A. 17:29C-10(a), which gives an insurer the choice of sending out cancellation notices by certified mail to be signed by the recipient per N.J.S.A. 17:29C-10(a)(1), or, in the alternative, by regular mail but subject to the conditions expressed in N.J.S.A. 17:29C-10(a)(2). There is no due process violation or other legal basis to preclude an insurer from choosing the alternative to certified mailing.

B.

We concur with the motion judge that NJM has sufficiently established its compliance with subsection (a) of the statute. The certifications of D'Orazio and Fay, and the associated documents, including the proof-of-mailing register, clearly support the trial court's finding that NJM mailed a letter to plaintiff, along with cancellation mailings to other insureds, on December 13, 2019. As we noted, D'Orazio checked the entries, initialed the register, and certified that her coworker who delivered the mailing to the post office had also initialed the register. Nothing in the statute or case law requires D'Orazio to certify that she personally carried the letters to the post office. D'Orazio permissibly attested to her personal knowledge of the company's routine practices in this regard, see

18

N.J.R.E. 406, and as to her personal involvement in the creation of the register for December 13, 2019. NJM also supplied the court with the Post Office's "date stamped proof of mailing showing the name and address of the insured." N.J.S.A. 17:29C-10(a)(2).

Even if viewed in a light most favorable to plaintiff, the motion record amply supports the trial court's finding of NJM's compliance with subsection (a) of the statute. There are no genuine issues of material fact to litigate respecting that portion of the statute.

## C.

We part company, however, with the trial court's conclusive determination that NJM demonstrated its compliance with subsection (b). The present record is inadequate to support that conclusion.

The pivotal document concerning subsection (b) is the cancellation notice itself and the markings on that document. In the top right quadrant of the single-page document, it declares in typeface that the document is "certified to be a true copy, original mailed December 13, 2019." However, this typewritten statement is unaccompanied by any signature. It fails to identify by name or initials the person who was making the certification. Nor does it indicate the date on which the statement was certified. The only date set forth is the alleged

date of the mailing, but not a date on which a true duplicate copy of the contents of the mailing was made.

In addition, near the middle of the page there is an illegible signature that is dated 1/23/2020 and on the left-hand side, halfway down the page, are the undated initials, "CJ". At the top of the page, an "UNDERWRITING Process Cancellation" stamp is dated December 31 with additional handwriting that appears to say: "S/O 1/10 DS."

It is unclear from the present record what these markings exactly signify. None of the certifications by Heller, Fay, or D'Orazio attempt to explain either how the certified copy was made or obtained, nor the meaning of any of the markings. They do not attest to either personal knowledge of those matters, nor do they attest to any routine practices of the company concerning them. NJM relies on the trial court's finding that its bare typed (and unsigned and undated) declaration on the document that the duplicate copy is a true one satisfies N.J.S.A. 17:29C-10(b). We disagree.

This court made abundantly clear in <u>Celino</u>, 211 N.J. Super. at 543, that subsection (b) of the statute "requires that the duplicate be certified as a true copy <u>contemporaneously</u> with preparation and mailing of the original" (emphasis added). "The added weight of the evidence thus afforded to the file

20

copy is <u>clearly dependent on a contemporaneous certification</u>." <u>Ibid.</u> (emphasis added). As noted above, we reiterated that requirement in <u>Uphold</u>, 316 N.J. Super. at 173.

Here, we cannot tell from the motion record who issued the certification typed on the document and when it was so certified. It could be December 13, 2019, but it might be a later time, an interval which <u>Celino</u> criticizes. The presence of handwritten notations on the document that appear to refer to dates in January 2020 add to the confusion and uncertainty. Although NJM's counsel urges us to ignore the handwritten markings and suggests they may relate only to post-mailing internal processing activities, the record has no sworn statement by a company witness providing such an explanation.

Given these shortcomings and uncertainties of the record, and the absence of testimony from a knowledgeable witness at a deposition or plenary hearing that addresses and resolves the concerns, we remand this matter for further proceedings, limited to NJM's compliance or non-compliance with subsection (b). We leave it to the trial court in its discretion to determine if additional discovery would be beneficial to develop the record. We also leave it to the trial court in the first instance to determine whether the compliance issues are appropriate for a jury trial in this declaratory judgment action, or whether it

would be more appropriate and practical to conduct a plenary hearing on the issues.

In remanding this case, we do not intend to impose an undue or impractical burden on insurance companies in cancelling the policies of non-paying insureds. Nonetheless, the statutes and case law precedents are clear in their mandate. "In order to be effective, notices of cancellation must be sent in strict compliance with the provisions of N.J.S.A. 17:29C-10." Hodges, 260 N.J. Super. at 223 (citing Lopez, 239 N.J. Super. at 13). We suspect that, going forward, it will not be difficult for insurers to have an employee date and sign (or initial) the certification typed on the forms. Here, the absence of any such attestation, along with the markings that post-date the asserted date of mailing, create a need to develop the record more fully.

Affirmed in part, vacated in part, and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division