648 A.2d 279

ALEJANDRA ICABALZETA, TO BE APPOINTED GENERAL ADMINISTRATRIX OF THE ESTATE OF FEDERICO ICABALZETA AND ALEJANDRA ICABALZETA, AS ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF FEDERICO ICABALZETA AND REINA ISABEL LOAISAGA, PLAINTIFFS–APPELLANTS, v. SEA–LAND SERVICES, INC., A CORPORATION DOING BUSINESS IN THE STATE OF NEW JERSEY, AND JOHN DOE AND ABC CORP. (NAMES BEING FICTITIOUS, CURRENTLY UNIDENTIFIED OWNERS, OPERATORS AND MAINTAINERS OF A VESSEL AND ITS APPURTENANCES) AND THE M/V COMMITMENT, HER ENGINES, BOILERS AND APPURTENANCES, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 5, 1994—Decided October 20, 1994.

510

Before Judges SHEBELL, SKILLMAN and KLEINER.

*Richard M. Winograd* argued the cause for appellants (*Ginarte & O'Dwyer,* attorneys; *Mr. Winograd,* on the brief).

*James W. Bartlett, III,* argued the cause for respondent Sea–Land Services, Inc. (*Wilson, Elser, Moskowitz, Edelman & Dicker,* attorneys; *William J. Riina,* of counsel; *Mr. Riina* and *Mr. Bartlett,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

This is an appeal from a summary judgment in favor of defendant Sea–Land Services, Inc. (Sea–Land) in a wrongful death action brought pursuant to section 905(b) of the Longshore and Harbor Workers' Compensation Act. 33 *U.S.C.* § 901 to § 950. Sea–Land is the owner of the ship on which the fatal accident occurred. Decedent was an employee of Coastwide Marine & Ship Services, Inc. (Coastwide), with which Sea–Land contracted to clean a large fuel tank in the ship.

On the day of the accident, most of the members of Coastwide's crew—excluding the decedent—began cleaning the tank at approximately 8:00 a.m. Prior to that time, Sea–Land employees placed approximately five or six sets of portable fluorescent lights outside the tank. Coastwide employees subsequently brought the lights down into the tank and placed them near the areas where they worked. Sea–Land's employees did not supervise the way in which Coastwide's employees cleaned the tank or placed the portable lights.

Decedent arrived at the vessel at approximately 4:00 p.m. and, together with two other workers, descended down a series of vertical ladders in order to arrive at the access hole, or "cut out," leading to the tank in which the rest of the Coastwide crew had already been working for approximately eight hours. The decedent walked in front of the other two men as they made their way through the access hole and up the ladder inside the tank. When decedent arrived at the top, he stepped onto a narrow strip of metal designed in a horseshoe shape around the inside perimeter of the tank. There was a large opening, or "lightening hole" in the center of the tank at that level, and there were no guardrails

around the hole. The decedent began to walk along a poorly illuminated part of this metal ledge, sometimes referred to as a "stringer," towards the location where the other Coastwide workers were cleaning the tank. Apparently unable to see that the ledge had a horseshoe shape rather than being straight, the decedent stepped off the side, falling to his death on the metal deck below.

The trial court granted Sea–Land's motion for summary judgment on the ground that even if there were an unreasonably dangerous condition in the area of the ship where the accident occurred, this condition was the responsibility of Coastwide rather than Sea–Land.

Section 905(b) provides in pertinent part:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party ... and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.... The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

[33 *U.S.C.* § 905(b).]

In the leading case interpreting this provision, *Scindia Steam Navigation Ltd. v. De Los Santos,* 451 *U.S.* 156, 101 *S.Ct.* 1614, 68 *L.Ed.*2d 1 (1981), the plurality opinion of the Court stated:

The [shipowner's duty of due care] extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property.... [A]bsent contract provision, positive law, or custom to the contrary ... the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore.[1]

[*Id.* at 166–67, 172, 101 *S.Ct.* at 1622, 1624, 68 *L.Ed.*2d at 12, 15.]

---

[1] In *Hill v. Texaco, Inc.,* 674 *F.*2d 447, 451 (5th Cir.1982), the court stated that "[t]he rationale of *Scindia* is not limited to stevedoring operations. It clearly applies to any independent contractor and its harborworker employees covered by the LHWCA and working aboard ship."

Thus, the Court drew a sharp distinction between the shipowner's responsibility for dangerous conditions which are present when a ship is turned over to an outside contractor and dangerous conditions which develop during the course of the contractor's operations.

This distinction was discussed in greater detail in *Kirsch v. Plovidba*, 971 *F.*2d 1026, 1029–31 (3rd Cir.1992):

> *Scindia* holds that the shipowner has no continuing duty to inspect or supervise cargo operations conducted by the stevedore *after* turnover. But *Scindia* does not cast any doubt on the shipowner's duty to inspect the ship for hazards *before* turning the ship over to the stevedore, because inspection is integral to providing the stevedore with a reasonably safe workplace, a duty that *Scindia* explicitly recognized.
>
> . . . .
>
> ... [W]here a danger is obvious but easily avoidable, the shipowner will not be liable for negligence.
>
> . . . .
>
> But in some cases, a shipowner cannot reasonably rely on longshore workers to avoid obvious hazards, and therefore the courts have rejected a bright-line rule that a shipowner can *never* be liable for injuries caused by obvious hazards. . . . Frequently, this question is one of degree, for the standard is not whether it was absolutely impossible to avoid the hazard, but whether, under all the circumstances, safer alternatives were impractical. . . . In many cases, this fact-intensive question will be inappropriate to decide on summary judgment and must be left for the jury.
>
> . . . .
>
> We therefore conclude that a shipowner may be negligent for failing to eliminate an obvious hazard that it could have eliminated, but only when it should have expected that an expert stevedore could not or would not avoid the hazard and conduct cargo operations reasonably safely.

Plaintiff contends that Sea–Land breached its duty to provide safe working conditions for Coastwide's employees by failing to provide adequate lighting and by failing to install railings along the ledge off of which the decedent fell. We conclude that plaintiff did not present any evidence from which a jury could find that Sea–Land failed to discharge whatever duty it may have had to provide lighting for Coastwide to use in cleaning the fuel tank. However, plaintiff presented sufficient facts from which a jury could find that shipowner breached its duty to provide safe working conditions by turning over a ship which it knew or should

have known would pose an unreasonable danger to Coastwide's employees due to the absence of any railings along the ledge which the employees were required to traverse in order to clean the tank.

Louis Martucci, Sea–Land's First Assistant Engineer, testified at his deposition that Sea–Land left five or six sets of lights outside the opening going into the tank for Coastwide's employees to use in their cleaning operations. Francisco Ortiz, Coastwide's supervisor, testified that when his work crew needed additional lights, he obtained them from the engine room of the ship and lowered them into the tank. Plaintiff failed to present any evidence in opposition to Sea–Land's motion for summary judgment raising a factual issue regarding this part of Martucci's and Ortiz's testimony. Plaintiff also failed to present any evidence that the lights furnished by Sea–Land would have provided inadequate illumination if Coastwide's employees had properly placed them within their work area. Thus, although plaintiff presented evidence that the part of the ledge from which decedent fell was inadequately illuminated, plaintiff failed to present any evidence from which a reasonable jury could find that this inadequacy resulted from Sea–Land's negligence. Instead, the undisputed evidence indicates that the failure of Coastwide's employees to use the lights provided them by Sea–Land to adequately illuminate the area where the decedent fell created a transient dangerous condition that arose after the ship was turned over to Coastwide. Therefore, in the absence of any evidence that Sea–Land had actual knowledge of this condition, there is no basis for the imposition of liability upon Sea–Land for the alleged inadequate illumination in the area of the decedent's accident.

In contrast, the absence of railings along the ledge from which the decedent fell was not a transient condition which developed during Coastwide's cleaning operation but rather a fixed condition which existed when the ship was turned over to Sea–Land. Plaintiff's claim that Sea–Land was negligent in turn-

ing over the ship to Coastwide in this condition was supported by the report of plaintiff's expert,[2] Corning Townsend, which states:

> [The tank] is fitted with permanent vertical ladders specifically fitted to be used for periodic inspection, cleaning and access to another tank. The horizontal stringer located at level 6850 is more than a structural member. It is the only means of access to the Overflow Tank located above level 9085.
>
> Therefore this stringer is a walkway, and must be fitted with all legally required devices and prudent means of safe keeping normally associated with such a walkway.
>
> . . . .
>
> The walkway at level 6850 should have a permanent rail. It would not require any additional maintenance since it is in a fuel oil tank, much like the permanent ladders fitted between levels. It would cost perhaps less than $1000 to install per side.
>
> . . . .
>
> Additionally, ... [Sea–Land] chose not to minimize the existing danger by installing proper temporary railings, providing warning signs or experienced personnel to warn of the inherent danger.

In addition, there was evidence from which the jury could have inferred that it would not have been practical for Coastwide to install a temporary railing to protect employees who found it necessary to walk upon the ledge. Timothy Knauer, a Sea–Land employee, testified:

> Q. Was any consideration ever given to providing any railings, when an outside contractor comes in to clean the tank, for those longitudinal structures?
>
> A. No.
>
> Q. Do you know why not?
>
> A. It would be impractical.
>
> Q. How would it be impractical?
>
> A. You can't mount railings until the tank is clean. You can't do hot work until the tank is clean. So the contractor has to come in and clean the tank before you can mount the railings.
>
> . . . .

---

[2] Plaintiff properly relied upon this report in opposing Sea–Land's motion for summary judgment, even though its expert's opinions were not submitted in the form of an affidavit, see *Baldyga v. Oldman*, 261 *N.J.Super.* 259, 266, 618 A.2d 877 (App.Div.1993), and relied in part on regulations adopted by the Occupational Safety and Health Administration. See *Martinez v. Korea Shipping Corp., Ltd.*, 903 *F*.2d 606, 611 (9th Cir.1990).

Q. Do you know of any reason why railings could not be permanently affixed inside the structure?

A. Any reason why? No.

Although this witness suggested that an outside contractor might erect scaffolding, he did not assert that scaffolding could have been effectively used in the work area in question or that it would have prevented decedent's accident.

■ We also note that a shipowner is not absolved of responsibility under § 905(b) simply because an outside contractor has not exercised due care in providing safe working conditions for its employees. *Woodruff v. United States*, 710 *F.*2d 128, 130–31 (4th Cir.1983); *Subingsubing v. Reardon Smith Line, Ltd.*, 682 *F.*2d 779, 780–81 (9th Cir.1982); *see also Davis v. Portline Transportes Maritime*, 16 *F.*3d 532 (3rd Cir.1994). Moreover, although an action against a shipowner under § 905(b) may not be brought under the strict liability concept of unseaworthiness, a shipowner may be held liable for negligence in turning over the ship to an outside contractor without providing a reasonably safe working environment for the contractor's employees. *Martinez v. Korea Shipping Corp., Ltd., supra*, 903 *F.*2d at 608–10.

Therefore, plaintiff presented sufficient evidence for a reasonable jury to find that the absence of a railing along the ledge from which the decedent fell created a dangerous condition which existed when Sea–Land turned over the ship to Coastwide, and that Sea–Land should have expected that Coastwide could not or would not correct this condition before commencing work.

■ Plaintiff's further argument that the trial court erred in failing to find that the shipowner breached its duty to intervene after it actually knew that Coastwide's crew was continuing to work improvidently is clearly without merit. *R.* 2:11–3(e)(1)(E). Plaintiff presented no evidence that Sea–Land acquired actual knowledge of any dangerous condition which developed after it turned the ship over to Coastwide. Sea–Land's liability, if any, must be based on a violation of its turnover duty rather than its duty to intervene. See *Wilcox v. Trans Pacific Shipping Co.*, 923

F.2d 3 (1st Cir.1991); *Martinez v. Korea Shipping Corp., Ltd., supra,* 903 *F.*2d at 611.

Accordingly, we affirm the summary judgment with respect to plaintiff's claim that Sea–Land was negligent in failing to provide adequate illumination in the work area but reverse with respect to plaintiff's claim that Sea–Land was negligent in turning over the ship to Coastwide without guardrails in the area where it knew decedent and others would be working.