**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1554-14T2

IN THE MATTER OF THE
CIVIL COMMITMENT OF C.F.,
SVP-690-14.

_____

Submitted March 30, 2017 — Decided  June 9, 2017

Before Judges Hoffman and Whipple.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No. SVP-690-14.

Joseph E. Krakora, Public Defender, attorney
for appellant C.F. (Alison Perrone, Designated
Counsel, on the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent State of New Jersey
(Melissa H. Raksa, Assistant Attorney General,
of counsel; Francesco Ferrantelli, Jr., Deputy
Attorney General, on the brief).

PER CURIAM

C.F. appeals from an October 27, 2014 judgment that he continues to be a sexually violent predator in need of civil commitment pursuant to the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38.  Because the trial court's findings

as to all of the elements necessary for civil commitment under the SVPA are supported by clear and convincing evidence, we affirm.

C.F. was first convicted of a sex offense in 1985, when he sexually assaulted a cognitively limited adult female. C.F. pled guilty to second-degree sexual assault, N.J.S.A. 2C:14-2(c), and was sentenced to five years of probation and required to attend a community psychiatric institute. While on probation for the first offense, C.F. sexually assaulted a seven-year-old girl he was babysitting. After the girl's mother rejected him, C.F. went in to the girl's bedroom while she was sleeping, took off her pants, and rubbed her vagina with his hand. C.F. pled guilty to second-degree sexual assault, N.J.S.A. 2C:14-2(b), and was sentenced to ten years at the Adult Diagnostic Treatment Center (ADTC) with five years of parole ineligibility.

In addition to the two sexual assaults for which C.F. was convicted, he admitted to sexually assaulting children and women, from the time he turned eighteen years old in 1981 to when he was arrested in 1989. C.F. admitted the number of victims ranged from ten to twenty-five.

C.F. has been subject to treatment at various treatment programs and institutions since his commitment in 1990, without demonstrated success. During C.F.'s six-year stay at the ADTC, C.F. had approximately twenty-nine disciplinary incidents.

Because of his behavior, C.F. was placed in administrative segregation for four to five years, limiting his opportunity to engage in treatment. When C.F. was transferred to the Ann Klein Forensic Center (AKFC) in 1998, he was considered an "untreated sex offender" and a "danger to the community for women and young children." While at AKFC, C.F. exposed himself to others and engaged in inappropriate sexual activities with peers. A 2008 psychological assessment written by a clinical psychologist at AKFC reported C.F. had achieved "little, if any progress" and had a "total lack of impulse control." This assessment reported C.F. was "sexually dangerous to society and must reside in a highly supervised environment in order to prevent this inevitable relapse."

C.F. was transferred to Trenton Psychiatric Hospital (TPH) in 2010, where he was enrolled in a sex offender specific relapse prevention group program. C.F. was unwilling or unable to apply the concepts taught or to make the necessary changes in his behavior and failed to successfully complete the program. In June 2013, C.F. reported his arousal level to be ten out of ten, with ten being the highest. At that time, C.F. was taking Lupron to reduce arousal. At TPH, C.F. was observed watching a video of young girls dancing and stated he enjoyed "watching certain body parts being shaken on screen," but acknowledged the video was

"considered inappropriate for him" to watch. In September 2013, C.F. inappropriately touched and attempted to kiss a developmentally disabled patient at TPH. C.F. also disclosed to his treatment team that he had an urge to rape one of the pregnant patients in his unit. In November 2013, a TPH psychiatrist recommended C.F. be considered for SVPA commitment.

On May 2, 2014, the State filed a petition to commit C.F. pursuant to the SVPA. On May 12, 2014, the trial court issued an order for temporary commitment pending a full hearing. A final commitment hearing was conducted on October 23, 2014, where the State presented expert testimony and a forensic report from Dr. Roger Harris, M.D., and a forensic report from Dr. Christine E. Zavalis, Psy.D.

Dr. Harris testified he conducted three evaluations of C.F. and reviewed C.F.'s past records. C.F. reported to Dr. Harris that he began sexually assaulting children when he turned eighteen years old and was equally aroused by boys and girls. He told Dr. Harris he had been voluntarily committed in 1982, after he approached young girls offering them money in exchange for sex. C.F. stated his victims were children he would babysit or relatives, and he would fondle their private parts with his hand. C.F. stated he was "most aroused to [sic] 7 years old" as they were most "appealing." C.F. stated young girls and boys made him

feel "important and powerful" because he had "control over them." C.F. reported he had dreams of having sex with children while at AKFC. As to his first sexual assault conviction, C.F. reported he tied up and raped the woman because "her parents were in [their] business," and he was angry the woman's mother would not let her have sex with him.

Dr. Harris noted C.F.'s "ease at being so dismissive of some pretty serious events" and his "carefree attitude about behaviors." Based upon his observations, Dr. Harris diagnosed C.F. with pedophilic disorder, primarily girls, not exclusive; other specific personality disorder with borderline and antisocial traits; and other specified psychotic disorder. Dr. Harris testified C.F.'s arousal had not dissipated despite years of treatment. Based upon his assessment, C.F.'s arousal would be highly unlikely to diminish. Dr. Harris testified C.F. demonstrated cognitive distortions, which allowed him to rationalize and minimize his actions, and he demonstrated poor volitional control.

Dr. Harris concluded C.F. was "highly likely to sexually re-offend if placed in a less restrictive setting." Dr. Harris testified he used Static-99, an "actuarial instrument . . . used to give[] an estimate on the risk to sexually re-offend." C.F. scored a low to moderate risk to reoffend, however, Dr. Harris

testified the instrument did not fully estimate C.F.'s risk to reoffend considering his strong deviant arousal and his demonstrated strong antisocial attitudes and behaviors. C.F. estimated his risk to reoffend was at fifty percent.

The State moved Dr. Zavalis's report into evidence as substantive testimony without objection. Dr. Zavalis reported C.F. admitted to the two sexual assaults that resulted in convictions but did not believe his actions had any effect on his victims. Dr. Zavalis diagnosed C.F. with pedophilic disorder (sexually attracted to males and females, nonexclusive type); other specified paraphilic disorder (hebephilia & nonconsent); other specified personality disorder (antisocial and borderline features); other specialized schizophrenia spectrum and other psychotic disorder; alcohol use disorder (mild, in a controlled environment); and intellectual disability. Dr. Zavalis also used the Static-99 test and found C.F. scored in the moderate-high risk category. Dr. Zavalis concluded C.F. was highly likely to engage in future acts of sexually deviant behavior if released into the community and recommended C.F. be committed to Special Treatment Unit (STU).

C.F. testified on his own behalf. He testified about his treatment, how he has learned to switch his thoughts when having a deviant sexual thought, and how he would continue to seek

treatment in the community if discharged. C.F. denied admitting he asked young girls for sex in exchange for money and reports he watched videos of teenagers dancing. C.F. stated the incident when he kissed a fellow patient was consensual and denied touching the patient inappropriately. When asked why his doctors would make up these alleged statements, he answered, "[P]eople do tell stories." C.F. numbered his victims between ten and twenty-five and many were young girls between the ages of seven and teenage years. When asked about his reported arousal level being ten out of ten, C.F. answered, "Unfortunately, yes that's true", but testified his arousal level to young girls had gone away. C.F.'s mother asked the court if her son could be placed in a home or participate in a program.

The judge rendered his oral opinion on October 27, 2014. Based upon the expert testimony and documents in evidence, the court found the State met its burden by clear and convincing evidence. The judge found C.F. suffers from mental abnormalities that individually and collectively predispose him to engage in acts of sexual violence and if released, he would "be in the reasonably foreseeable future highly likely to engage in acts of sexual violence."

On appeal, C.F. argues:

THE STATE FAILED TO PROVE BY CLEAR AND
CONVINCING EVIDENCE THAT C.F. WAS SUBJECT TO
SVP COMMITMENT.

"The scope of appellate review of a commitment determination is extremely narrow and should be modified only if the record reveals a clear mistake." In re D.C., 146 N.J. 31, 58 (1996). We give the utmost deference to the reviewing judge's determination, as these judges are "specialists" in SVPA matters. In re Civil Commitment of R.F., 217 N.J. 152, 174 (2014) (citing In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)). The findings of the trial court "should be disturbed only if so clearly mistaken that 'the interests of justice demand intervention'"; as long as the findings are supported by "sufficient credible evidence present in the record," the findings will not be disturbed. Id. at 175 (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

The SVPA allows for the involuntary commitment of an individual believed to be a "sexually violent predator." In re Commitment of W.Z., 173 N.J. 109, 120 (2002) (citing N.J.S.A. 30:4-27.28). The individual must have been "convicted, adjudicated delinquent, or found not guilty by reasons of insanity of a 'sexually violent offense.'" Ibid. (quoting N.J.S.A. 30:4-27.26). At a commitment hearing, the State must prove the individual has been convicted of a sexually violent offense, the

individual has "a mental abnormality or personality disorder," and the individual is highly likely to reoffend due to the disorder. Ibid. Trial courts must determine if

> [a]n individual . . . pose[s] a threat to the health and safety of others if he or she were found, by clear and convincing evidence, to have serious difficulty in controlling his or her harmful behavior such that it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend.
>
> [Id. at 130.]

The testimony and expert opinion of Dr. Harris, and the expert opinion of Dr. Zavalis, support the determination by clear and convincing evidence C.F. suffers from a mental abnormality and personality disorder that significantly impairs C.F.'s ability to control his sexually violent behavior. The record establishes C.F. has not progressed in treatment and his behaviors demonstrate poor volitional control. Both Dr. Harris and Dr. Zavalis found C.F. to be highly likely to reoffend if released.

The trial judge found both experts to be credible and uncontradicted. We give deference to a trial judge's findings based upon their "opportunity to hear and see the witnesses and to have the 'feel' of the case." R.F., supra, 217 N.J. at 174 (quoting Johnson, supra, 42 N.J. at 161). C.F. has had the opportunity to engage in treatment; however, he is still considered

9

an untreated sex offender. We find there is ample evidence in the record to support the trial judge's order committing C.F. to the STU.

C.F. argues the State is using his sexual assault conviction from twenty-seven years ago to commit him. While "the commission of the original crime[] is not in and of itself conclusive of further commitment," see In re Commitment of G.G.N., 372 N.J. Super. 42, 59 (App. Div. 2004), the State presented expert testimony and opinions detailing C.F.'s post-offense history. C.F. admitted to Dr. Harris and Dr. Zavalis his high arousal level in recent years, which the court found to be "damaging." C.F. reported his arousal level was ten out of ten. Dr. Harris testified C.F. admitted his likelihood of reoffending was fifty percent. The record demonstrates the court did not rely solely on C.F.'s sexual assault conviction but rather, considered C.F.'s entire history, past and present, to determine C.F. posed a high likelihood of committing a sexually violent act if released.

Additionally, C.F. argues the trial court afforded too much evidential value to the State's experts and the experts' reliance on hearsay was fundamentally unfair. During trial, C.F.'s counsel did not object during Dr. Harris's testimony or when the State moved to admit Dr. Zavalis's expert opinion into the record as substantive testimony.

We have said, "[T]here is a tipping point where due process is violated by the use of hearsay," G.G.N., supra, 372 N.J. Super. at 58, but that is not the case here. An expert may rely on hearsay statements while testifying at trial as long as the information is such as "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." In re Civil Commitment of J.H.M., 367 N.J. Super. 599, 612 (App. Div. 2003) (quoting N.J.R.E. 703). Additionally, an expert may testify as to hearsay statements "to confirm an opinion which he reached by independent means." Baldyga v. Oldman, 261 N.J. Super. 259, 266 (App. Div. 1993) (citing State v. Humanik, 199 N.J. Super. 283, 305 (App. Div.), certif. denied, 101 N.J. 266 (1985)).

Both experts were permitted to rely upon C.F.'s past records in order to formulate their opinion of him currently and report their findings, as the review of C.F.'s records was of the type forensic experts would have reviewed to make their evaluations pursuant to N.J.R.E. 703. Accordingly, we conclude that the record supports the trial judge's determination that each of the elements under the SVPA were proven by clear and convincing evidence.

C.F.'s last argument concerning the expert's reliance upon "supposed admissions" lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1554-14T2