# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0942-20

A.S.,[1]

    Plaintiff-Respondent,

v.

R.S.,

    Defendant-Appellant.

_____

    Submitted December 6, 2021 – Decided December 20, 2021

    Before Judges Sumners and Vernoia.

    On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FV-20-1405-20.

    Lubiner, Schmidt & Palumbo, LLC, attorneys for appellant (Todd D. Palumbo and John E. Jenkins, on the briefs).

    Thomas F. Verrastro, attorney for respondent.

---

[1] We use initials because the names of victims and alleged victims of domestic violence are excluded from public access under Rule 1:38-3(c)(12).

PER CURIAM

Defendant R.S. appeals from an October 23, 2020 final domestic violence restraining order (FRO) entered in favor of his twenty-one-year-old daughter, plaintiff A.S., pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. The Family Part entered the FRO following a trial and its determination defendant committed the predicate act of simple assault, N.J.S.A. 2C:12-1, under the PDVA, see N.J.S.A. 2C:25-19(a)(2), and an FRO was required to protect plaintiff from future acts of domestic violence.

On appeal, defendant does not dispute the court's determination he committed the predicate act of simple assault. He argues the FRO should be reversed because the evidence does not support the court's determination an FRO is necessary to protect plaintiff from future acts of domestic violence. Unpersuaded by defendant's argument, we affirm.

I.

During the two-day trial, plaintiff offered her version of the May 13, 2020 incident that gave rise to her complaint for an FRO. Plaintiff testified she was home from college and became involved in an argument with defendant. During the argument, defendant demanded that plaintiff give him her cellphone. When she retreated into the kitchen with the phone, defendant followed her. Plaintiff

2

moved through the kitchen and onto a landing for the steps leading to the basement. Defendant entered the kitchen, picked up a plastic step stool, and threw it at plaintiff. The step stool struck plaintiff in the stomach.

Plaintiff went into the basement, and defendant continued following her. Plaintiff testified she could not leave the basement because there were plastic storage bins on one side of her, a barbell set on the other, and defendant stood in front of her. Plaintiff explained defendant "was throwing things at [her]" and she "had [her] hands over [her] head just trying to protect" herself. Defendant threw a plastic storage bin at plaintiff, and, after it shattered, he threw shards of plastic from the bin at her. Plaintiff attempted to cover her face, holding her wallet and keys over her head, and clenching her arms and hands in front of her body. The shards of plastic defendant threw at plaintiff struck her. While defendant continued yelling "at the top of his lungs" to "give him [her] cellphone," he "hit[] [her] on the head with his palm" and pulled her "hair rotating [her head] back and forth," causing her eye to strike the barbell set. Defendant then "ripped" the wallet and keys from plaintiff's hands, and left the basement. Plaintiff identified photos depicting bruises to her eye, rib cage, and her thigh that she attributed to defendant's actions during the incident.

A-0942-20

Plaintiff also testified concerning prior acts of domestic violence. When she was a sophomore in high school, defendant told plaintiff to sit on the floor, and that if she spoke, he would hit her in the head. Defendant struck her in the head "multiple times" after she spoke. In 2018, plaintiff received text messages from defendant in which he said, "I want to smack you across the face if that's the way you want to fight back," and "I want to smash you through a wall right now."[2] In December 2019, sixth months before the May 13, 2020 incident, plaintiff and defendant argued during a car ride, and defendant accelerated the vehicle and threatened to crash it into a pole. Additionally, during one occasion while she was in college, defendant struck plaintiff with his right hand above her shoulder during an argument while defendant drove her in a car. While plaintiff was in college, defendant also threatened to "beat the crap out of" her a least a few times a year.

Defendant denied all the alleged prior acts of domestic violence and he offered a different version of the May 13, 2020 incident. He acknowledged he argued with plaintiff, raised his voice, and used foul language throughout the incident. He asserted that he asked plaintiff to give him her cellphone, she

---

[2] The text messages were admitted in evidence but are not included in the record on appeal. Our description of the content of the text messages is based on the plaintiff's unrefuted trial testimony.

4

refused, and he acted out of "frustration" because plaintiff refused to give him her phone. Defendant testified he followed plaintiff from the living room, where he first told her to give him the phone, into the kitchen in order to obtain the phone. He denied throwing the plastic step stool at her, but he admitted kicking it "hard" "out of frustration" with plaintiff after he entered the kitchen. He testified that after he kicked the stool, it went toward the landing. Defendant denied he saw plaintiff on the landing at that time and that the stool hit her.

Defendant further acknowledged following plaintiff into the basement, continuing his demands for the phone. Defendant testified that he repeatedly told plaintiff, "I am not here to beat the crap out of you. I just want the phone." He admitted he threw a plastic storage bin that broke into pieces when it struck the barbell set located near plaintiff. He denied throwing the bin at plaintiff. Defendant testified he picked up a large piece of the broken bin and struck it repeatedly on the barbell set, causing it to shatter into smaller pieces. According to defendant, this was all done while he continued to insist, in a raised voice, that plaintiff turn over her phone. Defendant explained that he finally "pried" the phone out of plaintiff's hands and then left the basement. He admitted his hands may have become tangled in her hair when he did so.

A-0942-20

In its decision from the bench, the court "found [plaintiff's] testimony to be more credible than [defendant's] testimony." The court further found: defendant was "angry" and "very frustrated" during the incident; he threatened to "beat the crap out of" plaintiff; he either kicked or threw the plastic stool in the direction of the landing despite knowing plaintiff was on the landing; and he threw the plastic storage bin at her, and, "in his rage" picked up a piece of the bin and "bang[ed] it against the barbell set" with the pieces hitting plaintiff as she was "huddled down . . . right there." The court also accepted plaintiff's testimony that as she "cowered in front of" defendant, he grabbed her hair and caused her to hit her head, before prying the items from her hand and leaving the basement. Based on those findings, and the court's determination the injuries depicted in the photographs entered in evidence were sustained during the incident, the court found defendant committed the predicate act of simple assault through knowing and reckless conduct. See N.J.S.A. 2C:12-1(a)(1).[3]

---

[3] Plaintiff's complaint also alleged defendant committed the predicate act of harassment. N.J.S.A. 2C:33-4(a). It appears plaintiff did not pursue the claim at trial, and the court did not make any findings on the claim. Plaintiff neither cross-appealed from the lack of a determination on the claim nor argues on appeal the court erred by not addressing it. We therefore do not consider the claim on appeal.

6

The court accepted as credible plaintiff's testimony concerning the prior incidents of domestic violence, finding defendant previously hit and threatened plaintiff with violence. The court determined there was a need for a restraining order to protect plaintiff from future acts of domestic violence under the standard established in Silver v. Silver, 387 N.J. 112, 125-27 (App. Div. 2006), explaining:

> there is a previous history of domestic violence. And the existence of immediate danger to person or property based on the relationship of father to child. There is always going to be this connection, even if she's not living in the house. They are parent to child. And there is the continued possibility. . . that they would be back together . . . [a]nd there is the possibility based on the history that . . . that [plaintiff] . . . could be placed in immediate danger . . . As for financial circumstances, I don't believe . . . they exist at this time. I do believe that [defendant] did have financial power over [plaintiff] at the time even though college had been paid for. But he provided a roof over her head, the car, the cell phone. And that was used here, at least in this case, over the . . . plaintiff. But at this point she is out of the home and no longer will be requiring his financial assistance. But . . . there were in this circumstance clearly the financial circumstances did take a part in that. And there's no custody or children or other orders of protection.

The court concluded a "restraining order is necessary to protect the victim from this danger repeating itself," and entered the FRO. This appeal followed.

A-0942-20

II.

"We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). "[D]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). We will "not disturb the 'factual findings and legal conclusions of the trial [court] unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. of Am., 65 N.J. 474, 484 (1974)). "[A] 'trial [court's] findings are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles.'" R.G. v. R.G., 449 N.J. Super. 208, 218 (App. Div. 2017) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215-16 (App. Div. 2015)).

To properly enter a FRO under the PDVA, a trial court must make findings in accordance with the two-prong analysis established in Silver, 387 N.J. at 125-

A-0942-20

The court must first "determine whether the plaintiff proved by a preponderance of the credible evidence" that the defendant committed "one or more of the predicate acts" of domestic violence set forth in N.J.S.A. 2C:25-19(a). Id. at 125. Second, if the court finds plaintiff proved the defendant committed one or more predicate acts of domestic violence, it must then determine whether it "should enter a restraining order that provides protection for the victim." Id. at 126.

As noted, defendant does not challenge the court's determination he committed the predicate act of simple assault, N.J.S.A. 2C:12-1(a)(1), and plaintiff satisfied her burden under Silver's first prong. Defendant claims only that the court erroneously determined plaintiff established by a preponderance of the evidence that an FRO is necessary to "protect [plaintiff] from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127.

The commission of one of the predicate acts of domestic violence set forth in N.J.S.A. 2C:25-19(a) does not, on its own, "automatically . . . warrant the issuance of a domestic violence order." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995). Where a court determines a defendant committed a predicate act of domestic violence, it must then consider the factors enumerated in N.J.S.A. 2C:25-29(a)(1) to (6) to determine whether an FRO is necessary "to

protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 125-27; see also A.M.C. v. P.B., 447 N.J. Super. 402, 414 (App. Div. 2016). A court should consider "[t]he nonexclusive statutory factors [in N.J.S.A. 2C:25-29(a)(1) to (6),] includ[ing] the 'previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse,' the 'existence of immediate danger to person or property,' and the 'best interests of the victim and any child.'" D.D.B., 442 N.J. Super. at 223 (quoting N.J.S.A. 2C:25-29(a)(1)-(2), (4)). Nonetheless, we have held that

> [w]hen the predicate act is an offense that inherently involves the use of physical force and violence, the decision to issue an FRO "is most often perfunctory and self-evident." But even when the predicate act does not involve physical violence, the trial court must still evaluate the factors in N.J.S.A. 2C:25-29(a)(1) to -(6) to determine whether an FRO is warranted to protect the victim from an immediate danger or to prevent further abuse.
>
> [A.M.C., 447 N.J. Super. at 417 (internal citations omitted) (quoting Silver, 387 N.J. Super. at 127).]

Contrary to defendant's contention, the court correctly applied these principles in determining an FRO is necessary to protect plaintiff from future acts of domestic violence. In the first instance, the May 13, 2020 incident involved "the use of physical force and violence" against plaintiff, see ibid., and threats of physical violence as well. Defendant pursued plaintiff, threw or

10

kicked a stool that struck her in the stomach, and followed her to the basement. He threw the plastic bin and shards of the bin at plaintiff, and then pulled her hair, rotating her head and causing it to strike the barbells and resulting in an injury to her eye. The court found that while he assaulted plaintiff in the basement, defendant also repeatedly threatened to "beat the crap out of" her. Defendant does not challenge the court's findings, and they are otherwise supported by the evidence the court deemed credible. They reveal threats of violence and a physical assault resulting from defendant's anger and frustration over his adult daughter's simple refusal to accede to his demand that she turn over a cellphone.

The court's determination an FRO is required to protect plaintiff from future acts of domestic violence is founded on its consideration of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to (6). For example, the court relied on "[t]he previous history of domestic violence" between the parties, "including threats, harassment, and physical abuse." N.J.S.A. 2C:25-29(a)(1). The court accepted plaintiff's testimony that during the four years she was in college immediately prior to the May 13, 2019 incident, defendant struck her on one occasion and threatened physical violence against her in text messages and otherwise on numerous occasions. Again, the record supports the court's

11

findings as to the prior history, and defendant does not challenge those findings on appeal.

The court also considered the financial circumstances of the plaintiff and defendant, N.J.S.A. 2C:25-29(a)(3), noting that when the incident occurred defendant provided plaintiff's place of residence and otherwise provided some financial support for her. The court, however, recognized that factor was no longer relevant because at the time of trial plaintiff was not dependent on defendant for any financial support.

The court, however, determined that due to the parent-child relationship between defendant and plaintiff, there was a possibility of future interactions between them if an FRO was not entered. The court determined that due to a physical and violent assault on May 13, 2019, defendant's threats of violence on that day, and the history of domestic violence, it was in plaintiff's best interests, N.J.S.A. 2C:25-29(a)(4), to protect her from future acts of domestic violence by defendant.

Defendant argues the court erred because he has no desire to maintain a relationship with plaintiff and, therefore, he poses no risk to her for future acts of domestic violence. The argument is untethered to any competent evidence. Defendant did not testify at trial he has no desire to maintain a relationship with

plaintiff, and the record is otherwise bereft of any evidence he does not want a relationship with her. To the contrary, defendant testified he loves plaintiff and "always wanted to spend more time with her." He never testified that following the incident his love for plaintiff, or his desire to spend time with her, changed. Thus, the factual premise for defendant's claim he poses no threat to plaintiff because he has no interest in seeing her constitutes nothing more than a self-serving contention unsupported by any evidence. See Baldyga v. Oldman, 261 N.J. Super. 259, 265 (App. Div. 1993) ("The comments following [Rule 1:6-6] illustrate that its purpose is to . . . eliminate the presentation of facts which are not of record by unsworn statements of counsel made in briefs and oral arguments.").

Defendant also argues the evidence does not support an FRO because the May 13, 2019 incident constituted an "unusual circumstance" and plaintiff failed to prove the assault was "tainted by a desire to abuse or control plaintiff." In support of his argument, defendant relies exclusively on our statement in R.G., that to support the issuance of an FRO under the PDVA, the predicate offense "must be tainted by a desire to abuse or control the victim because of their domestic relationship." 449 N.J. at 230. Defendant's reliance on R.G. is misplaced.

In R.G., two brothers who had not resided together in the same household for thirty-six years became embroiled in a dispute concerning the method of care for their ill mother.[4] Id. at 213. They exchanged emails over the plaintiff's plans for the care in which the defendant threatened to "break" the plaintiff "financially, morally, physically and mentally," and said he "would come down there real soon . . . [g]et ready," and "I feel like coming to you and slapping you silly." Id. at 217. They were also involved in an alteration outside of the facility where their mother was receiving care during which the defendant shoved the plaintiff six times. Id. at 215.

The plaintiff filed a complaint seeking an FRO under the PDVA claiming defendant committed the predicate acts of harassment, N.J.S.A. 2C:33-4, and simple assault, N.J.S.A. 2C:12-1(a)(1). Id. at 217; N.J.S.A. 2C:25-19(a)(2) and (13). Based on evidence we later determined to be inadmissible, the trial court found the defendant committed the charged predicate acts and that an FRO was required to protect the plaintiff from future acts of domestic violence. R.G., 449 N.J. at 217-18.

---

[4] We held the court had jurisdiction over the dispute because, under the 2015 amendments to the PDVA, a person "who is a present household member or was any time a household member" of the defendant is "a person protected under the act." Id. at 219 (quoting N.J.S.A. 2C:25-19(d)).

A-0942-20

We reversed on a multitude of grounds. We determined the exchange of emails did not constitute harassment under N.J.S.A. 2C:33-4. Id. at 224-27. We found the evidence supported the court's finding committed the predicate act of simple assault, id. at 228, but we reversed the court's entry of the FRO because the court's finding the defendant committed prior acts of domestic violence was based on "irrelevant and inadmissible hearsay" evidence the defendant had slapped his son. Id. at 222-23. We explained there was no history of domestic violence between the plaintiff and the defendant, and that "[t]he critical fact absent from the required analysis is a sufficient nexus between the predicate conduct, . . . the shoving, and the domestic relationship between the parties." Id. at 230.

It was in that context we made the statement defendant relies on in support of his challenge to the court's determination an FRO is necessary to protect plaintiff – that the predicate act of domestic violence must be tainted by a desire to control the victim "because of their domestic relationship." Ibid. However, that declaration provides no support for plaintiff here because unlike the parties in R.G., plaintiff and defendant had an ongoing domestic relationship at the time of the May 13, 2019 incident. The incident occurred in defendant's home, which was plaintiff's primary residence, and there was a clear nexus between

15

defendant's assault on plaintiff and their domestic relationship. Moreover, unlike in R.G., here the court found a history of domestic violence by defendant against plaintiff that supported its determination an FRO was necessary to protect plaintiff against future acts of domestic violence.

The evidence further established defendant's May 13, 2019 assault was "tainted by a desire to . . . control" plaintiff. See ibid. Defendant pursued plaintiff through the house and into the basement, assaulting and threatening her along the way, because plaintiff defiantly refused his demand for the phone. Defendant testified repeatedly at trial that he acted in manner he did because all he wanted was the phone. In our view, defendant's actions were clearly in response to his loss of control over a daughter who refused to yield to his demand, and defendant's assaultive and threatening conduct were the means he employed to regain control over her. As the evidence established, defendant's violent course of conduct ended only after he exercised control over his cowering and scared daughter by forcibly taking from her what she refused to voluntarily provide.

Defendant's conduct on May 13, 2019, constitutes a paradigm of domestic violence inflicted as an exercise of control. See ibid. For that reason, and the many others found by the trial court, there was ample evidence supporting its

A-0942-20

determination an FRO is required to protect plaintiff from future acts of domestic violence. See Silver, 387 N.J. Super. at 127.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0942-20